Erwin v. Hall.

---

CHARLES R. ERWIN ET AL.

v.

ALTHEA L. HALL ET AL.

1.   DEED OF TRUST—EQUITABLE TITLE—NOTICE.—Where a party takes security by conveyance of real estate from the owner of the fee without notice of the rights of the *cestui que trust* in the property, he takes it freed from those rights, and the equitable title of the *cestui que trust* becomes subject and subordinate to the deed of trust and is liable to be extinguished by a foreclosure of the security.

2.   SALE—DUTY OF TRUSTEE.—The fact that the trustee at the sale in such case was notified that the trust deed was executed by the party in fraud of the complainants' rights, did not make it his duty to refuse to sell and to leave the parties to pursue their remedy in a court of equity.

3.   SAME.—Where the sale was advertised at ten o'clock and the trustee appeared at the place of sale at the hour appointed, and opened the sale by reading the notice, and remained on the ground until the sale was consummated, which was some time after eleven o'clock, but delayed in order to

enable complainants to procure an injunction restraining the sale. *Held,* that the delay did not affect the validity of the sale.

4. DESTRUCTION OF DEED.—A deed is but the evidence of a conveyance, and the destruction of a deed, while it affects the evidence of the conveyance, does not vacate or affect the conveyance itself or re-invest the title in the grantor.

APPEAL from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding. Opinion filed February 3, 1886.

Mr. CHARLES H. LAWRENCE, for appellants.

Mr. S. R. MOORE, for appellee.

BAILEY, P. J. This was a bill in chancery brought by Charles R. Erwin and Emma A. Erwin against Althea L. Hall and others to redeem certain premises from a sale under a deed of trust. The facts out of which the controversy arose are somewhat complicated, and are substantially as follows:

On the 2d day of March, 1858, William Erwin, then of La Salle county, Illinois, executed his promissory note for $4,000 to R. E. Goodell, due one year after date, and secured said note by mortgage. On the 14th day of February, 1862, said Erwin died, leaving him surviving Althea L. Erwin, his widow, and the complainants, then of the age of two and four years respectively, his children and only heirs at law. After his death Goodell transferred the note and mortgage to J. O. Glover, to be held by him in trust for Mrs. Erwin, who was Goodell's sister, so long as she should remain unmarried, and in the event of her marriage, for the benefit of the complainants, the trust being evidenced by a written declaration of trust by the trustee.

Glover afterward caused the mortgage to be foreclosed, and the proceeds, $5,476, were invested by him and the income paid to Mrs. Erwin until some time in 1868, when she was married to Moses H. Hall, whereby the beneficial interest in said trust fund was determined as to her, and passed to her children, the complainants. Afterward, about June 2, 1868,

Glover turned the fund over to Mrs. Hall for the purpose of enabling her to invest it in the purchase of an undivided one third of a lot in Chicago, for the benefit of the complainants, the other two thirds being at the same time purchased by Elvis Harwood and James Goodspeed. The price of the lot was $20,000, of which each purchaser paid $5,000 in cash, and all joined in a mortgage upon the entire lot to secure the remaining $5,000 of the purchase money. The lot was conveyed to Harwood, Goodspeed and Mrs. Hall, nothing being inserted in the deed or put on record showing that Mrs. Hall held the one third interest conveyed to her in trust for the complainants. The evidence seems to show, however, that her co-tenants knew of the trust.

August 1, 1869, Mrs. Hall was appointed by the County Court of La Salle county, guardian of the complainants. On the 27th day of May, 1870, she borrowed of one McClaughry $3,200, and gave therefor the joint notes of herself and her husband, maturing two years after date and bearing interest at the rate of ten per cent. per annum, and secured said notes by a deed of trust upon the undivided one third of said lot to one Rowley, as trustee, and to one Funess as his successor in trust. Said trust deed and notes having been destroyed by the great fire of October 9, 1871, a new set of notes and trust deed of like form were executed on the twentieth day of the following May, as evidence of the indebtedness and the security on said lot. It does not appear that either McClaughry or Rowley had notice that they were dealing with trust property.

The evidence fails to show with entire certainty what disposition was made by Mrs. Hall of the money borrowed, but it tends to show that about $1,800 was applied in payment of one third of the $5,000 purchase money mortgage, and that of the residue about $600 was used in paying a debt of Mrs. Hall, and part taken by Mr. Hall, and part applied by Mrs. Hall to the payment of family expenses. Interest was paid on the note to McClaughry, and the note extended from time to time, to November 27, 1876.

Mrs. Hall having, with her husband, removed to Chicago, appears to have collected rents for herself and co-tenants, and

in that way she became indebted to Francis Goodspeed, the grantee of James Goodspeed, in the sum of $521. 22. On the 1st day of January, 1877, she and her husband executed their promissory note to said Francis Goodspeed for $900, due in one year, and secured said note by a second deed of trust to one Knox upon the undivided one third of said lot. A part of the consideration of said note was the portion of said $521.22 then remaining unpaid, and the residue was for money loaned to Mr. and Mrs. Hall. By a cotemporaneous agreement, it was provided that Mrs. Hall's one third of the rents should be collected and applied in payment of the note.

Default having been made in the payment of the McClaughry note, the property was advertised for sale under the trust deed by Rowley, the trustee, on the sixth day of March, 1878, at ten o'clock A. M. at the door of the court house in Chicago. Between nine and ten o'clock in the morning of that day, a bill for an injunction restraining the sale was presented to the Circuit Court of Cook county, on behalf of the present complainants, by their next friend, and a preliminary injunction ordered to issue upon the filing of a certain injunction bond. Pending the application for an injunction, the hour of ten o'clock arrived, whereupon the trustee went to the door of the court house and read the notice of sale, and remained there without proceeding further, awaiting the result of the application. After the injunction was allowed, Mr. Hall, in behalf of the complainants, attempted to obtain a surety on the injunction bond, and the trustee waited for him to furnish such surety until after eleven o'clock, and Hall having failed to produce a surety who could justify, the trustee again read the notice of sale and sold the property to Henry W. Harwood for $3,700. It is claimed and the evidence tends to show, that at the time of the sale, Harwood had notice of the interest in said property claimed by the complainants.

Said bill was retained after the sale and remained pending until April 8, 1880, when it appears to have been dismissed by the court for want of prosecution. The certificate of evidence recites that said bill was read in evidence by the defendants, on the trial of the present suit, but the bill itself does

not appear in the record, and we accordingly have no means of knowing the nature of its averments. While said bill was pending both of the complainants attained their majority, Emma A. Erwin on the 25th day of January, 1879, and Charles R. Erwin on the 24th day of September, of the same year.

On the 25th day of January, 1881, the complainants filed a second bill which, as is claimed, stated substantially the same grounds of relief as the first. By that bill they alleged that they were the equitable owners of the undivided one third of said lot, and that at the time of the execution of said trust deed to Rowley, both McClaughry and Rowley had notice of their equitable rights to said lot, and praying for a partition and conveyance to them in severalty of the one third of said lot, and for a cancellation of said deed of trust. To that bill answers and replications were filed, but no efforts seem to have been made by the complainants to support their bill by evidence, and on the 12th day of June, 1882, the bill was dismissed by the court on its own motion, for want of prosecution. Nothing further was done until December 12, 1882, when the present bill was filed.

In this bill there is no averment that McClaughry or the trustee had notice of the complainants' equitable rights, at or before the execution of the deed of trust, but merely that at and before the trustee's sale, both they and Harwood, the purchaser, had notice. The prayer of the bill is that the complainants be permitted to redeem from the sale.

As the validity of McClaughry's trust deed is not now questioned, we are unable to see how the complainants could take anything by notice to the purchaser of their equitable rights prior to the sale. McClaughry having taken his security by conveyance from Mrs. Hall, the owner of the fee, without notice of the complainants' rights, took it freed from those rights, and the complainants' equitable title thereby became subject and subordinate to the deed of trust, and like any other subordinate interest, was liable to be extinguished by a foreclosure of the security. If, then, the sale was conducted fairly and properly, and in strict accordance with the power in

the deed of trust, the complainants' equities were foreclosed and cut off, and the purchaser's title was in no way affected by previous notice of their rights.

It is urged that the trustee, upon notice that the trust deed had been executed by Mrs. Hall in fraud of the complainants' rights, should have refused to proceed, and left the parties to pursue their remedy in a court of equity. No authorities are cited sustaining this view, and we know of no rule of law which imposed such duty on the trustee. Default having been made in the payment of the note, McClaughry had a right to have his security foreclosed, and it became the duty of the trustee, at his request, to proceed to execute the power in the deed of trust. We can not see how this right of Mc-Claughry could be affected by the fact that the complainants had been defrauded, so long as he was in no way participant in or responsible for the fraud. Had the matter been submitted to a court of equity, it can not be doubted that Mc-Claughry's right to a first lien would have been sustained and a foreclosure and sale decreed.

The material question, so far as this branch of the case is concerned is, whether the sale was made in conformity with the power granted in the deed of trust. We see no force in the objection that the sale, though advertised for ten o'clock, was not in fact made until after eleven o'clock. The trustee appeared at the place of sale at the hour appointed and opened the sale by reading the notice, and remained on the ground until the sale was consummated. The delay was at the instance and for the benefit of the complainants, and to enable them to procure an injunction restraining the sale. So long as the trustee appeared at the hour appointed and remained until the sale was made, it was not essential that the land should be struck off at precisely the hour named. Circumstances may have arisen which would have justified the trustee in keeping the sale open a much longer time than he did.

It is alleged that the sale was invalid because of an agreement between Harwood and Goodspeed that the latter should not bid against the former. We find no evidence of such

Erwin v. Hall.

agreement. Goodspeed was a junior incumbrancer, and before the sale there was some conversation between Harwood and Goodspeed about the former purchasing the latter's interest, in which Harwood said that he proposed to buy the property, and that if he succeeded in doing so, he would pay off Goodspeed's claim; but it does not appear that his proposition was accepted by Goodspeed, or that anything was said about the latter's becoming a bidder, and certainly there was no evidence of an agreement that Goodspeed should not bid.

It is finally urged as a ground for relief, that the sale was made, not under and by virtue of the original trust deed executed May 27, 1870, but of the deed executed May 20, 1872, after the first deed had been destroyed by fire. It is claimed that as the first deed conveyed the fee, the second deed could and did convey only the grantor's equity of redemption, and that the equity of redemption was the only interest really subject to sale under the last deed. This view may be ingenious, but it has no substantial basis. It is not necessary to resort to the doctrine of merger to give to the second deed all the effect of a conveyance of the fee, and that doctrine in fact has no application. A deed is but the evidence of a conveyance, so that the destruction of the deed, while it affects the evidence of the conveyance, does not vacate or affect the conveyance itself, or re-invest the title in the grantor. Courts of equity frequently decree the re-execution of deeds which have been lost or destroyed, but it has never been held that such re-execution operates as a new conveyance, but merely as furnishing evidence of a conveyance already made. What the courts will compel parties to do, they may do themselves with like effect. Here the deed of trust and notes were destroyed, without the fault of the holder, and he had a right to resort to a court of equity to compel their re-execution. Instead of requiring him to do so, the grantors voluntarily re-executed the papers, as substitutes for and to take the place of those destroyed. A deed of trust executed under these circumstances was not a new conveyance, but merely evidence of the conveyance made by the original

deed. On consideration of all the evidence, we are of the opinion that a right to redeem has not been shown.

It is urged on behalf of the appellees that, even if the complainants ever had any right to relief as against the trustee's sale, they have lost it by their *laches*. The conclusions which we have already reached render it unnecessary for us to examine that question. Without reference to the question of *laches*, we think the decree is warranted by the evidence, and it will therefore be affirmed.

Decree affirmed.