De Lafayette Stocking *vs.* Randall W. Hanson and another.

Randall W. Hanson *vs.* Darwin Stocking and others.

### May 26, 1886.

**Judgment—Unauthorized Appearance by Attorney.**—Facts considered, and *held* that the attorney who assumed to act for certain parties in applying to be substituted as plaintiffs in one action, and in appearing without service of process as defendants in another, had no authority to act for them, and the court got no jurisdiction over them in such actions, and that the judgments against them therein are void.

**Same—Vacating void Judgment.**—That the judgments, though void, appearing on the record to be valid, the parties had a right, on application to the court, to have them vacated.

**Same—Delay held not a Bar.**—A delay to make the application, so long as the parties have no notice of the judgments or of the actions, will not bar their right to have the judgments vacated, even though others have taken titles innocently, relying on the judgments.

The first of these actions was brought in the district court for Hennepin county, in April, 1871, by Cornell & Bradley as attorneys for plaintiff, against Wm. Hanson and Randall W. Hanson, to recover possession of lots 9 and 10, in block 129, in Minneapolis. The defendants answered, the action was tried July 3, 1871, a decision in favor of defendants was made and filed February 19, 1873, judgment thereon was entered February 24, 1873, and notice of the entry of judgment was served on Cornell & Bradley, on March 1, 1873.

The plaintiff, De Lafayette Stocking, died testate January 6, 1872. By his will he appointed Darwin Stocking and Benjamin N. Loomis his executors, and devised his estate, in undivided shares, to Darwin Stocking, Delphine Sophia Stocking, and others. This will was duly admitted to probate in Hennepin county on November 5, 1872, and recorded in the registry of deeds of that county on June 1, 1872.

On January 20, 1876, a supplemental complaint in the action was filed by George Bradley, as attorney, on behalf of the executors and devisees of the deceased plaintiff. This complaint recited the proceedings before had in the action, the death of the original plaintiff, the probate of his will, and the interests of the plaintiffs thereunder, and prayed that the judgment be opened, that they be substituted for De Lafayette Stocking as plaintiffs, and have leave and time to make a case for appeal from the judgment to the supreme court. The defendant answered, and plaintiffs demurred to the answer, and the demurrer was sustained by the district court. On appeal to this court, the order sustaining the demurrer was reversed. (*Stocking* v. *Hanson,* 22 Minn. 542.) After the decision in this court, judgment was entered, by stipulation, in favor of defendants, on September 6, 1876.

The second action was brought against the executors and devisees of De Lafayette Stocking to determine their claims to any interest in lot 10, block 129,—one of the lots involved in the first action. The complaint and summons were filed January 21, 1875, and on the same day George Bradley served notice of appearance as attorney for the defendants. An answer was interposed, and the action was tried by a jury, and on May 25, 1876, a verdict was rendered for plaintiff, and judgment thereon was at once entered.

On September 19, 1885, a motion was made in the first action, on behalf of the executors and of Delphine Sophia Stocking, that the decision filed February 19, 1873, (after the death of De Lafayette Stocking,) be vacated, and that they be substituted as parties plaintiff, with leave to prosecute the action to a final determination, or to begin a new action against the persons then in possession of the land as they might be advised. They also moved that the supplemental complaint filed in December, 1875, and all proceedings thereon, including the judgment entered September 6, 1876, be vacated and declared null and void.

At the same time the defendants in the second action, the executors and devisees of De Lafayette Stocking, appearing specially, made a motion in that action that the judgment and all the proceedings therein be declared null and void, and be vacated and set aside.

The motions were based on the affidavits of the executors and all the devisees of De Lafayette Stocking, each affidavit being to the effect that the affiant never knew Cornell & Bradley or George Bradley, and never directly or indirectly employed or authorized them or either of them to institute, appear in or conduct either of the actions; that neither Cornell & Bradley nor George Bradley ever presented any bill or received any pay for services; that the affiant has never been a resident of Minnesota, was never served with the summons in the second action, and never knew of either suit, or the judgment or any of the proceedings, until some time between September, 1884, and April, 1885.

It appeared that Messrs. Cornell and Bradley had been dead several years. In opposition to the motions it was shown that the first action was brought under the direction of McFarlane, Burd & Co., real-estate agents in Minneapolis, who employed Cornell & Bradley as attorneys pursuant to the following written agreement:

"Articles of agreement made and entered into this 6th day of August, 1870, by and between D. L. Stocking, of Binghamton, in the state of New York, party of the first part, and J. G. McFarlane, J. S. Burd, and J. C. Whitney, doing business under the firm name of McFarlane, Burd & Co., of Minneapolis, county of Hennepin, and state of Minnesota, parties of the second part, witnesseth:

v.35m—14

"Whereas the said D. L. Stocking has purchased of Carlos Wilcox lots nine (9) and ten (10) in block one hundred and twenty nine, (129,) in the town (now city) of Minneapolis, for three hundred dollars, and received a warranty deed for the same, afterwards one George Hanson bought said lots at tax sale and represents that he received a tax deed for the same.

"Now it is hereby expressly agreed by and between the parties to these presents, that the said parties of the second part are to get perfected the title of the said party of the first part to said lots by suit at law, or otherwise, and said party of the first part agrees to pay the said parties of the second part for perfecting his title to lots as aforesaid one half the net proceeds of the sale of said lots after the title is perfected, deducting first the cost of suit and also necessary expenses for the full accomplishment of the work.

"It is further agreed and understood, by and between the parties to these presents, that in case said parties of the second part fail to perfect the title to said lots, then, in that case they, the said parties of the second part, are to bear and pay all expenses incurred in trying to perfect the title of said D. L. Stocking to said lots.

"In witness whereof, we have hereunto set our hands and seals this sixth day of August, 1870.

> "D. L. Stocking.     (Seal.)
> "John G. McFarlane.     (Seal.)
> "J. S. Burd.     (Seal.)
> "J. C. Whitney.     (Seal.)"

The motions were denied by *Young*, J., and the moving parties appealed.

*H. M. Parker* and *J. B. Phelps*, for appellants.

*D. A. Secombe*, for respondent, Randall W. Hanson.

GILFILLAN, C. J. These two cases depend upon precisely the same question, to wit, the authority of the attorney who, in the first, assumed to act for the executors and devisees of the original plaintiff, in procuring them to be substituted as plaintiffs after his death, and his authority to appear for, and give the court jurisdiction over them in the second, in which they were made defendants. Each of the executors and devisees, by affidavit, denies having given any such

authority, or having communicated in any way with or known said attorney, or having known or heard of such actions, or either of them, until within a year before the motions to vacate the judgments and proceedings were made. In opposition to this is the affidavit of J. C. Whitney to the fact that his firm was authorized by the original plaintiff in the first action to bring the action, and that they employed the attorneys who brought it, and also employed the attorney who procured the substitution to be made; and also employed him to defend the second action; and that his firm, after the death of De Lafayette Stocking, "was employed and acted as the agent of the executors of said De Lafayette Stocking in and about the probate of the will of said De Lafayette Stocking in said county, and in and about the real estate of said De Lafayette Stocking in said county." In another affidavit he, with one of his partners, denies that his firm ever had authority from the executors or devisees to employ any attorney for them in such matter.

There must have been a misunderstanding by the attorney as to the fact of his employment, or by the firm mentioned as to their authority to employ him for the executors and devisees. There is nothing in the first affidavit of Whitney to suggest authority in his firm to bind the devisees in any matter, or to bind the executors in so important a matter as subjecting them to the jurisdiction of a court. Authority to do that must be precise and definite. The statement in that affidavit that his firm was agent of the executors in and about the real estate of said De Lafayette Stocking does not tend to show it; and the presumption of authority in the attorney arising from his professional character and acts is fully removed by the affidavits in support of the motions.

There, then, are two judgments against the executors and devisees which are void for want of jurisdiction in the court to render them; and as they appear on the record to be valid, the parties have a right that they be removed or vacated. A party may doubtless lose that right by laches,—that is, by so long delay in applying for it that others, innocently relying on the record and apparent validity of the judgment, have placed themselves in such position that to vacate the judgment will operate to defraud them; but to give delay

that effect on the rights of the party it must be with notice of the judgment, or, at least, of the action, so that the delay may be deemed a fault.   In these cases the delay after notice was not unreasonable, and it is not shown that during that time any one acted in reliance upon the judgments.   The applications should have been granted.

Orders reversed.