MERCY P. BAUSMAN and others *vs.* AUSTIN F. KELLEY.

February 13, 1888.

38 197
44 447
38 197
45 254
45 414
38 197
73 20
38 197
81 440

**Mortgage—Foreclosure by Advertisement in Name of Deceased Mortgagee.**—A mortgagee being dead, a foreclosure by advertisement upon a notice of sale purporting to be given by authority of the mortgagee, is void; nor could it be cured by proof that in fact the notice was given by authority of another person.

**Same — Possession of Note and Mortgage not Evidence of Title.**—The mere possession of a note and mortgage securing the same, by a person other than the payee (and mortgagee) to whom the note was payable, the same being unindorsed, is not evidence of title in such person.

**Same—Certificate of Sale as Evidence—Laws 1883, c. 112.**—Laws 1883, c. 112, prescribing a limitation upon the right to avoid a statutory foreclosure of a mortgage, is inapplicable to a foreclosure which was void by reason of total absence of authority to exercise the power of sale, as where a stranger has assumed to foreclose.

**Cloud on Title—Suit against One in Possession.**—An action to remove a cloud upon title may be maintained by one out of possession against one in possession of the land; following former decisions.

**Same—Limitation of Action.**—An action to remove a cloud upon title *held* not barred by the general statute of limitations, as an action for relief on the ground of fraud.

**Same—Equitable Relief—Defendant's Equities.**—In such an action, although the plaintiff has the legal title, the court will not grant equitable relief without regarding the equitable claims of the defendant.

**Same — Bona Fide Purchaser — Equitable Protection.**—A defendant, who has purchased the land in good faith, for value, under color of title, and without notice, and who, with his grantors, had been in possession adverse to the real owner for many years, is entitled to the equitable protection of the court, unless the plaintiff has been without fault.

**Same—Laches of Purchasers of Title under Foreclosure.**—To constitute laches there must have been knowledge, actual or imputable, of the facts which should have prompted action, or, if there was ignorance, that must have been without just excuse.

**Same — Laches of Mortgagor — Knowledge of Record Title claimed under Foreclosure.**—For an owner of land, knowing that his title ap-

pears of record to have been divested, to remain quiescent many years, until the equities of *bona fide* purchasers of the record title have intervened, is laches which a court of equity will regard.

**Same—Knowledge of Adverse Possession—Intent to Abandon Land.** From long-continued adverse possession knowledge on the part of the owner may be inferred; and, since this should prompt to inquiry, the source of such adverse claim will also be presumed to have been known, that appearing upon the records as an apparently valid title. If the real cause for unreasonable delay in seeking such relief has sprung, not from excusable ignorance of the facts, but from a purpose to abandon the land to incumbrancers, that would constitute laches as respects innocent purchasers.

Plaintiffs brought this action in the district court for Hennepin county, to remove a cloud from their title to the land described in the complaint. They allege in their complaint that they are the owners of the legal title, having acquired it by inheritance and deeds of conveyance from one Alexander Moore and his grantees, Jacob B. Bausman and Zenas E. Britton, and that on December 31, 1855, Alexander Moore, being then the owner of the land, duly mortgaged the same to one Joseph Hall, who died in the year 1865; that thereafter, and in 1870, proceedings, regular in form, for the foreclosure of this mortgage by advertisement were conducted in the name of Joseph Hall, as mortgagee, by R. B. Galusha, as attorney for such mortgagee, under which foreclosure proceedings a sale in form was made to Galusha; that such foreclosure proceedings were entirely unauthorized, and that the defendant claims title under conveyance from Galusha. The answer admits the ownership of Alexander Moore in 1855, and the making and regular foreclosure of the mortgage to Hall, and denies that the foreclosure was unauthorized, or that the plaintiffs or any of them have any interest in the land. The answer further alleges that the defendant is owner and in possession of the land as an innocent purchaser for value, and that at the time of his purchase the title to the lot appeared to be and was perfect of record in his grantor, and he had no notice or knowledge of any claim to the land on the part of the plaintiffs or any of them. The answer further alleges that for more than 25 years prior to the commencement of the action none of the plaintiffs, their grantors or predecessors under whom they

claim, had been in possession of or exercised any act of ownership over the land, or paid any taxes thereon, but on the contrary the defendant and his grantors and predecessors in interest had been in peaceable possession thereof under title adverse to the plaintiff, and had been exercising acts of ownership over the land peaceably and uninterruptedly, and had paid all taxes thereon, for a period of more than 20 years prior to the commencement of the action; and that each and every of defendant's grantors and predecessors in interest during that period have been innocent, *bona fide* purchasers for the full value of the land, and that the title so purchased appeared perfect of record, and that they so purchased without any notice or knowledge of any claim thereto on the part of the plaintiffs, or on the part of any of the persons under and through whom plaintiffs now claim to have derived title; that all of those persons abandoned the land, and had ceased to pay taxes on it more than 25 years ago, and continued such abandonment until the commencement of this suit, during all of which time neither they nor any other person claiming under them ever asserted or made any claim of ownership. As a further and third defence, the answer alleges that this is an action for relief on the ground of fraud, and that the cause of action alleged in the complaint did not accrue within six years prior to the commencement of the action. A demurrer to this third defence was sustained by *Lochren,* J. The action was tried by *Young,* J., who found the facts stated in the opinion, and ordered judgment for the plaintiffs. A new trial was denied, judgment was entered, and the defendant appealed.

Upon the trial, the plaintiffs' case was made out by the documentary evidence and by proof of the death of Joseph Hall in 1865. The defendants, having offered in evidence the Hall note and mortgage, offered to show that, at the time of the alleged foreclosure, R. B. Galusha had authority to foreclose the mortgage from one Charles C. Lund, from whom he received it, and that the mortgage was foreclosed either as the property of Galusha or of Lund. The defendant did not offer to show that it was foreclosed as the property of Joseph Hall, and did not offer any evidence to show a transfer from Joseph Hall to Lund, excepting the fact that the mortgage and note were

found in the possession of Lund. The evidence so offered was excluded, upon plaintiffs' objection. The defendant then further offered to prove that the reason why the foreclosure proceedings were taken in the name of Joseph Hall was that there was no written assignment of the mortgage and note, and that the assignment was simply an equitable one, by delivery. On plaintiffs' objection, this was excluded. The defendant also offered to prove that the defendant and each of the successive grantees named in the chain of title from R. B. Galusha to the defendant paid the amounts of the considerations named in their respective deeds, were *bona fide* purchasers for value, had no notice or knowledge, actual or constructive, of the death of Joseph Hall or of any fact invalidating the foreclosure proceedings, and that the defendant and each of the successive grantees from R. B. Galusha have, during all the times since the sale to R. B. Galusha, paid the taxes upon the land in question, and have been in actual possession thereof. This evidence was objected to by plaintiffs, and was excluded. No further evidence was offered on the part of the defendant.

*Edward Savage,* for appellant.

The plaintiffs are not entitled to come into a court of equity for the relief sought because of their unexplained laches and delay in asserting their rights. 2 Story, Eq. Jur. §§ 15, 20; *Smith* v. *Clay,* Ambler, 645; *Brown* v. *County of Buena Vista,* 95 U. S. 157, 161; *Leavenworth County* v. *Chicago, R. I. & P. Ry. Co.,* 18 Fed. Rep. 209; *Badger* v. *Badger,* 2 Wall. 87; *Marsh* v. *Whitmore,* 21 Wall. 178; *Godden* v. *Kimmel,* 99 U. S. 201; *Haff* v. *Jenney,* 54 Mich. 511; *Terry* v. *Fontaine,* 2 S. E. Rep. 743; *Murray* v. *Hudson,* 32 N. W. Rep. 889; *Partridge* v. *Shepard,* 71 Cal. 470, (12 Pac. Rep. 480;) *Murphy* v. *Doyle,* 37 Minn. 113, (33 N. W. Rep. 220.)

A court of equity will not take cognizance of an action to remove a cloud on a title, in favor of one who claims on the strength of a perfect legal title in himself, unless he is in possession of the property. (The authorities cited to this point are too numerous to be inserted.)

The evidence did not show that the foreclosure proceedings were void. There is no evidence to show that the sheriff had no authority

to sell from the real owner of the mortgage. It is not proved that the proceedings were prejudicial or hostile to the rights of the true beneficiary of the power, nor that the plaintiffs themselves have been wronged or their rights affected by the enforcement in this way of the mortgage lien. There was much more plausible ground for arguing a total want of power to sell in the case of *Merchant* v. *Woods,* 27 Minn. 396. The mortgage sale cannot be questioned under the provisons of Laws 1883, *c.* 112.

The action was barred under the provisions of Gen. St. 1878, *c.* 66, §§ 3, 6, subdiv. 6.

*Francis G. Burke* and *George M. Bennett,* for respondents.

The attempted foreclosure of the mortgage in the name of Joseph Hall, who was deceased, was a nullity. *Hayes* v. *Lienlokken,* 48 Wis. 509; *Niles* v. *Ransford,* 1 Mich. 338; *Marlett* v. *Jackman,* 3 Allen, 287; *Lee* v. *Clary,* 38 Mich, 223; *White* v. *Secor,* 58 Iowa, 533, (12 N. W. Rep. 586.)

The plaintiffs were not guilty of negligence or laches, and there is no evidence or presumption in this case against them. Even if they were chargeable with constructive knowledge of the foreclosure proceedings because of their being a matter of record, still, as remarked by the learned trial judge, "they will not be presumed to have known of Hall's death any more than such knowledge would be imputed to the grantees of Galusha." *Hamilton* v. *Batlin,* 8 Minn. 359, (403;) *Bunce* v. *Gallagher,* 5 Blatchford, 481; *Donnelly* v. *Simonton,* 7 Minn. 110, (167;) *Johnson* v. *Cooper,* 2 Yerg. (Tenn.) 523; *Miner* v. *Beekman,* 50 N. Y. 337, 343; *Remington Paper Co.* v. *O'Dougherty,* 81 N. Y. 474, 483; *Peirsoll* v. *Elliott,* 6 Pet. 95; 2 Story, Eq. Jur. 15; *Butman* v. *James,* 34 Minn. 547, (27 N. W. Rep. 66;) *Rundle* v. *Allison,* 34 N. Y. 180; *Everitt* v. *Everitt,* 41 Barb. 385; *Howell* v. *Leavitt,* 95 N. Y. 617; *Requa* v. *Holmes,* 16 N. Y. 193, 26 N. Y. 338; *Austin* v. *Dean,* 40 Mich. 386; *Johnson* v. *Knapp,* 35 Mich. 307; *Prout* v. *Wiley,* 28 Mich. 164; Bigelow on Estoppel, 568; *Schall* v. *Williams Valley R. Co.,* 35 Pa. St. 191; *Meley* v. *Collins,* 41 Cal. 663; *Chandler* v. *White,* 84 Ill. 435; *Knouff* v. *Thompson,* 16 Pa. St. 357, 362; *Gordon* v. *Hobart,* 2 Sumner, 401; *D'Wolf* v. *Haydn,* 24 Ill. 525; *Camp* v. *Carpenter,* 52 Mich. 375, (18 N. W. Rep. 113;) *Watson* v.

*Spence,* 20 Wend. 260; *Crawford* v. *Hoeft,* 58 Mich. 1, (24 N. W. Rep. 645;) *Dodge* v. *Briggs,* 27 Fed. Rep. 160; *Hodgen* v. *Guttery,* 58 Ill. 431; *Griffiths* v. *Kellogg,* 39 Wis. 290; *Walker* v. *Ebert,* 29 Wis. 194; *Everts* v. *Agnes,* 4 Wis. 343; 6 Wis. 453; *Tischer* v. *Beckmith,* 30 Wis. 55; *Saltmarsh* v. *Smith,* 32 Ala. 404; *Thompson* v. *Lynch,* 29 Cal. 189; *De Court* v. *Sproul,* 66 Tex. 368, (1 S. W. Rep. 337;) *Arrison* v. *Harmstead,* 2 Barr, (Pa.) 191; *Berry* v. *Anderson,* 22 Ind. 37; *Smith* v. *South Royalton Bank,* 32 Vt. 341, 353; *Van Amruge* v. *Morton,* 4 Wharton, (Pa.) 382; *Napton* v. *Leaton,* 71 Mo. 358; *Sherrid* v. *Southwick,* 43 Mich. 515, (5 N. W. Rep. 1027;) *Watertown Ins. Co.* v. *Sewing Mch. Co.,* 41 Mich. 131; *Eldridge* v. *Pierce,* 90 Ill. 474; *Comstock* v. *Comstock,* 27 Mich. 97; *Slate* v. *Geddis,* 44 Iowa, 537; *Edgerton* v. *Jones,* 10 Minn. 341, (427;) *Keller* v. *Hannah,* 52 Mich. 535; *First Nat. Bank of Nevada* v. *Bryan,* (17 N. W. Rep. 165;) *Tabor* v. *Foy,* 56 Iowa, 539, (9 N. W. Rep. 897;) *Hait* v. *Ensign,* 61 Iowa, 724, (17 N. W. Rep. 163;) *Miller* v. *Clark,* 56 Mich. 337, (23 N. W. Rep. 35;) *Gaines* v. *New Orleans,* 6 Wall. 642, 716; *Coles* v. *Yorks,* 28 Minn. 464; *Yager* v. *Merkle,* 26 Minn. 429; *Hayes* v. *Lienlokken,* 48 Wis. 509; *Niles* v. *Ransford,* 1 Mich. 338; *Sheehy* v. *Hinds,* 27 Minn. 259; *Turnan* v. *Temke,* 84 Ill. 286; *Sherburne* v. *Rippe,* 35 Minn. 540; *Esdaile* v. *La Nauze,* 1 Younge & Col. 394, 399; *Reed* v. *Elwell,* 46 Me. 270; *Viele* v. *Judson,* 82 N. Y. 32, 41; *Citizens Nat. Bank* v. *Richmond,* 121 Mass. 110; *Fay* v. *Smith,* 1 Allen, 477; *Belknap* v. *Nat. Bank,* 100 Mass. 376; *Draper* v. *Wood,* 112 Mass. 315; *Wood* v. *Steele,* 6 Wall. 80; *Trustees Union College* v. *Wheeler,* 61 N. Y. 88; *Boone* v. *Chiles,* 10 Pet. 177; *Craig* v. *Leeper,* 2 Yerg. 193; *Gallion* v. *McCaslin,* 1 Blackf. 90; *Peake* v. *Highfield,* 1 Russell, 559; *Johnston* v. *Renton,* 9 L. R. Eq. Cas. 181; *Hamlin* v. *Sears,* 82 N. Y. 327; *Biddle Bogs* v. *Merced Mining Co.,* 14 Cal. 279, 367; *Fallass* v. *Pierce,* 30 Wis. 443; *Blodget* v. *Blodget,* 42 How. Pr. 19; *Allen* v. *City of Buffalo,* 39 N. Y. 386; *Barron* v. *Newberry,* 1 Bissell, 149; *Stevens* v. *Mechanics' Savings Bank,* 101 Mass. 109; *Butler* v. *Mullen,* 100 Mass. 453; *Hall* v. *Wiston,* 5 Allen, 126; *Davis* v. *Anderson,* 6 Nat. Bk'cy. Reg. 145; *Mays* v. *Mnfrs. Nat. Bank,* 4 Nat. Bk'cy. Reg. 446; *Hitchcock* v. *Sedgwick,* 2 Vernon, 156; *Calkins* v. *Copley,* 29 Minn. 471.

The record of the foreclosure proceedings was not notice to the

plaintiffs.   The registry laws were passed for the purpose of giving constructive notice to subsequent purchasers and incumbrancers, and to none others.   *Meley* v. *Collins,* 41 Cal. 663;  *Chandler* v. *White,* 84 Ill. 435;  *Schall* v. *Williams Valley R. Co.,* 35 Pa. St. 191.   Neither is the alleged possession of the defendant for 12 years constructive notice to the plaintiffs.   Wade on Notice, §§ 96, 97, 98, 203 to 223, inclusive, and cases cited.

The doctrine of laches is in no way applicable to the legal owner of land.   It applies only in cases where a party is seeking to enforce an equitable right to obtain a legal title, or some relief to which he is entitled based upon that equitable right.   The owner of land is not limited to any time within which he may bring an action to remove a cloud.   *Schall* v. *Williams Valley R. Co.,* 35 Pa. St. 191; *Miner* v. *Beekman,* 50 N. Y. 337;  *Edgerton* v. *Jones,* 10 Minn. 341, (427;)  *Coles* v. *Yorks,* 28 Minn. 464;  *Yager* v. *Merkle,* 26 Minn. 429; *Hunter* v. *Cleveland Stove Co.,* 31 Minn. 505, (18 N. W. Rep. 645;) *Mueller* v. *Fruen,* 36 Minn. 273, (30 N. W. Rep. 886;)  *Arrington* v. *Liscom,* 34 Cal. 365.

Lapse of time, however long, coupled even with knowledge of one's rights and silence, will not estop the legal owner in favor of innocent purchasers for value.   There must be encouragement added thereto in order to have that effect.   The alleged laches of the plaintiffs could only operate in this case as an estoppel, and the facts are not sufficient to constitute an estoppel.   *Dyer* v. *Dyer,* Cas. Ch. 108; *Hobbs* v. *Norton,* 1 Vernon, 136, Cas. Ch. 128;  *Inhabitants of Dixfield* v. *Newton,* 41 Me. 221;  *Kingman* v. *Graham,* 51 Wis. 232, 247; *Brant* v. *Virginia, etc., Co.,* 16 Am. Law Reg. N. S. 403;  *Pence* v. *Arbuckle,* 22 Minn. 417;  *Shillock* v. *Gilbert,* 23 Minn. 386, 394; *Brinckerhoff* v. *Lansing,* 4 John. Ch. 65;  *Coombs* v. *Cooper,* 5 Minn. 200, (254;)  *Califf* v. *Hillhouse,* 3 Minn. 217, (311;)  *Caldwell* v. *Auger,* 4 Minn. 156, (217;)  *Chaska Co.* v. *County of Carver,* 6 Minn. 130, (204;)  *County of Hennepin* v. *Robinson,* 16 Minn. 340, (381;)  *Whitacre* v. *Culver,* 8 Minn. 103, (133;)  *Matthews* v. *St. Paul & S. C. R. Co.,* 18 Minn. 392, (434;)  *Hill* v. *Epley,* 31 Pa. St. 331, 2 Smith, Lead. Cas. 766;  *Hawkins* v. *Methodist Church,* 23 Minn. 256;  *Wythe* v. *City of Salem,* 4 Sawyer, 88;  *Wheeler & Wilson Mfg. Co.* v. *Mona-*

*han*, 63 Wis. 194, (23 N. W. Rep. 127;) *Whitacre* v. *Culver*, 6 Minn. 203, (297;) *Andrews* v. *Lyons*, 11 Allen, 349; *Pierce* v. *Andrews*, 6 Cush. 4; *O'Mulcahy* v. *Holley*, 28 Minn. 31; *Ogilvie* v. *Jaeffreson*, 2 Giff. 353; *Pringle* v. *Phillipps*, 5 Sandf. 151; *Bree* v. *Holbech*, 2 Doug. 655; *Hayes* v. *Livingston*, 34 Mich. 384.

There is no such thing as an abandonment of a legal title to land; and if there were, still there is no evidence of abandonment in this case. *Jackson* v. *Bowen*, 1 Caines, 358; *Adams* v. *Rockwell*, 16 Wend. 285; *Tolman* v. *Sparhawk*, 5 Met. 475; *Sumner* v. *Stevens*, 6 Met. 337; *Gregg* v. *Blackmore*, 10 Watts, 192; *Allen* v. *Parish*, 3 Ohio, 107; *Steevens* v. *Earles*, 25 Mich. 40; Gen. St. 1878, *c*. 41; *Arnold* v. *Stevens*, 24 Pick. 106; *Bannon* v. *Angier*, 2 Allen, 128; *Owen* v. *Field*, 102 Mass. 90, 114.

DICKINSON, J.   Action to remove a cloud upon title.   We are called upon to consider the state of the title to the land in question, and the equitable rights of the parties.   In December, 1855, Alexander Moore, who then owned a tract of 120 acres of land, including the lot here in controversy, executed to Joseph Hall, a resident of the state of New York, a mortgage upon the same, to secure the payment of $277.37, with interest.   It contained the usual power of sale.   It was recorded at the time above stated.   In the following year (1856) Moore conveyed the land by warranty deed to Jacob B. Bausman and Zenas E. Britton, the covenant respecting incumbrances containing an express exception as to the Hall mortgage.   From those grantees the plaintiffs, by inheritance and by deeds of conveyance, have acquired the legal title, unless that was divested by proceedings under the mortgage.   The defendant's claim is through the foreclosure of the Hall mortgage.   That foreclosure is assailed upon the ground that the mortgagee, Hall, had died before the foreclosure proceeding was instituted.   He died in June, 1865.   About five years after his death, and in the year 1870, proceedings were instituted and completed for the foreclosure of the mortgage by a sale of the premises under the power.   These proceedings were regular in form and in accordance with the statute regulating such foreclosures.   To the printed notice of sale were appended the names and designations "Joseph Hall, mortgagee," and "R. B. Galusha, attorney for mortgagee."

The sale appears to have been made to Galusha, and a record of the proceedings, proper in form, was completed. Galusha conveyed by warranty deed to one Taft in 1873, and by successive warranty deeds this apparent title as to the lot in question has come to the defendant, all of such deeds having been recorded. Some other facts will be referred to farther on.

The foreclosure proceeding was wholly without authority, and void. The notice was of no legal effect. Hall, the mortgagee, being dead, could neither exercise the power of sale, nor confer authority upon another. A notice in his name and purporting to be by his authority, could be of no legal effect. His name had no potency after he had ceased to exist. *White* v. *Secor*, 58 Iowa, 533, (12 N. W. Rep. 586.) The offer to show that Galusha in fact had purchased the note and mortgage from one Lund, and that, not knowing of Hall's death, he conducted this proceeding in good faith, and really in his own behalf, was not material. In the first place, the offer did not go far enough to show that Galusha thereby acquired any interest in the note and mortgage. It was not assigned, and, the note being unindorsed by Hall, to whose order it was payable, the mere possession by Lund did not show ownership. *Van Eman* v. *Stanchfield*, 10 Minn. 197, (255;) 13 Minn. 70, (75;) *Hayward* v. *Grant*, 13 Minn. 154, (165.) The mortgage was an incident to the note, and not the principal thing. The action of a mere stranger could have no effect. *Hayes* v. *Lienlokken*, 48 Wis. 509, (4 N. W. Rep. 584;) *Miller* v. *Clark*, 56 Mich. 337, (23 N. W. Rep. 35.) Again, the notice was not, upon its face, and did not purport to be, the act of Galusha, but of Hall, the mortgagee. It is an essential quality of a notice that it appear to be given by competent authority,—*Niles* v. *Ransford*, 1 Mich. 338, (51 Am. Dec. 95;) *Roche* v. *Farnsworth*, 106 Mass. 509;—and a notice which, upon its face, is declared to be the act of a designated person, and which, as such, would be void, cannot be made effectual by proof that it was really the act of another and undisclosed person, not even standing in a relation of privity with the person in whose name the notice was given. A notice by a mere stranger can effect nothing. It is unnecessary to consider whether the merely equitable assignee

of a mortgage may foreclose the same, under the statute, in the name of his equitable assignor.

Anticipating here some facts referred to hereafter, we will say that the claim that the defendant, deriving his claim of title through Galusha, is in the position of a mortgagee in possession, cannot be sustained, for the reason just considered, that it does not appear that Galusha ever acquired any interest in the mortgage.

The defendant offered to prove that he was in the actual possession of the land; and it is claimed that in such a case an action of this nature will not be entertained in favor of the holder of the legal title. This position is sustained by very many authorities, but the rule was long ago established to the contrary in this state. *Donnelly* v. *Simonton*, 7 Minn. 110, (167;) *Hamilton* v. *Batlin*, 8 Minn. 359, (403,) (83 Am. Dec. 787.)

Again, is is contended that Laws 1883, *c*. 112, has interposed a limitation which bars this action. By the terms of that act, the sheriff's certificate of sale theretofore or thereafter made under a power contained in a mortgage, is made *prima facie* evidence that all the requirements of law have been complied with, and of title in fee after the expiration of the time for redemption ; "and no such sale shall be held invalid or set aside by reason of any defect in the notice thereof, or in the publication or posting of such notice, or in the proceedings of the officer making such sale, unless the action in which the validity of such sale shall be called in question be commenced, or the defence alleging its invalidity be interposed, within five years after the date of such sale." The act went into operation six months after its passage. Whatever may be the purpose and scope of this act, it cannot reasonably be construed as being applicable to a case where the authority to exercise the power was wholly wanting, and where the notice and sale were wholly unauthorized, and not merely irregular by reason of some want of conformity with the statute; otherwise any *stranger* to the mortgage and to the estate might acquire a title divesting that of the mortgagor by publishing an obscure notice of sale, subscribed by himself or in the name of the mortgagee, or without any signature or disclosed authority, and by causing a sale to be made

thereunder, he becoming the purchaser. It cannot be that it was intended that in such a case the period of limitation prescribed by this statute (which, in respect to a past foreclosure proceeding, might be only six months) should be effectual to divest the land-owner of his estate, regardless of the fact whether he knew of the fraudulent proceeding or not. In the case before us, there was more than a "defect" in the notice, and in the whole proceeding. In so far as it purported to be or was a notice, it was the act of a dead man, and the real actor had no more authority to institute the proceeding than any stranger would have had. We do not think the act of 1883 is applicable.

The action was not, within the general statute of limitations, barred by the lapse of six years, as being an action for relief on the ground of fraud.

Are the plaintiffs chargeable with such *laches* that the peculiar remedies of a court of equity will be refused as against an innocent purchaser for value of an apparently valid title? It is contended on the part of the plaintiffs that the defence of a *bona fide* purchase without notice is not available as against the *legal title*, even in a court of equity; and this position is not without authority in its support. Both reason and the weight of authority are, however, to the contrary. *Bassett* v. *Nosworthy*, Finch, 102, 2 Lead. Cas. Eq. 1, and notes; *Phillips* v. *Phillips*, 4 De Gex, F. & J. 208, 216, *et seq.*; Bisp. Eq. § 264; 2 Pom. Eq. Jur. §§ 740, 742, and cases cited. The principle upon which equity refuses to grant relief in such cases is equally applicable whether the plaintiff has or has not the legal estate. He cannot invoke equitable relief and at the same time insist that the court shall not regard any fact in the conduct or relations of the parties which may show his suit to be inequitable and against conscience. The defendant offered to prove that from a time a little subsequent to the conveyance from Galusha in 1873 down to the time of the trial,—a period of some 12 years,—the successive grantees of this apparent title, including the defendant, had been in actual possession of this land; that they had all purchased for valuable considerations, without notice or knowledge of any fact invalidating the foreclosure proceedings, and that they had paid the taxes. This

was rejected, for the reason, as appears from the written opinion of the learned judge filed with his decision, that, while this would show the defendant to be entitled to the equitable favor of the court, the case did not show that the plaintiffs were chargeable with laches,. and that hence the legal title must prevail. We concur in the view of the learned judge that these facts, if shown, would have entitled the defendant to the equitable protection of the court, unless the plaintiffs, who had the legal title, were also without fault such as. should prejudice their cause in a court of equity. We will therefore here assume that the facts were as indicated in the offer. The rejection of the evidence can only be justified upon the theory that it could not have affected the result. An essential element in a case to constitute laches is that the party whose delay is in question shall have been blamable therefor in the contemplation of equity, that he ought to have moved before, if he desired the peculiar and discretionary relief which courts of equity afford. There must, therefore, have been knowledge, actual or imputable, of the facts, which should have prompted a choice either to diligently seek equitable relief or thereafter to be content with such remedies as a court of law might afford; or, if there was actual ignorance, that must have been without just excuse. *Stocking* v. *Hanson*, 35 Minn. 207, (28 N. W. Rep. 507;) 2 Pom. Eq. Jur. §§ 809, 817, 965.

Whatever injurious consequences might naturally be anticipated as likely to result from delay must obviously be regarded in determining whether delay has been justifiable or culpable. A reason why equity discourages stale claims is based upon the consideration that the lapse of time has or may have been prejudicial by reason of the difficulty of proving the facts, or of the intervening of equities in favor of innocent persons, or perhaps from other causes. The policy manifested in our registry laws, to make the public records show the true state of the title to real property, has been such as to encourage purchasers to rely upon what the record discloses. That purchases of real estate are commonly made from those who appear to have the record title, without other inquiry than such as the records or the occupancy of the land may suggest, is a matter of common knowledge, of which no one can assume ignorance. Without de-

ciding whether the real owner who has recorded his title is under any *legal* duty to act, if, by the unauthorized and illegal conduct of another, the records are made to show that his title has been divested, we do say that he is placed in such a position that if, knowing the fact, he desires the aid of equity, he should seek it with reasonable diligence ; and that relief should be refused if, through his unreasonable delay, equities shall have intervened in favor of others. The continuous adverse possession of the defendant and his grantors for many years (we assume still what the defendant offered to prove) is to be presumed as a fact to have been known to the real owners of the estate. *McQuiddy* v. *Ware*, 20 Wall. 14. The divestiture of title by adverse possession rests upon this presumption of notice to the true owner of an open and hostile possession. *School-Dist.* v. *Lynch*, 33 Conn. 330, 334; *Turpin* v. *Saunders*, 32 Grat. 27; *Samuels* v. *Borrowscale*, 104 Mass. 207, 210. The fact of unauthorized possession, being known, should have put the owners of this land upon inquiry, and inquiry would have certainly disclosed the foreclosure proceedings, and the apparently valid title thus acquired. This should have prompted such further investigation as might be necessary to determine the expediency of action. If, under such circumstances, those having the obscured legal title remain inactive for many years, suffering the apparently valid title and continued *indicia* of ownership to allure innocent purchasers, to their prejudice, it cannot be that, as against such purchasers, they are entitled to the favor and the discretionary aid of a court of equity. If in fact there was ignorance of the adverse possession, not only should that be made to appear, but it must be excused before the plaintiffs would be entitled to relief. *McQuiddy* v. *Ware, supra.*

Some other circumstances are pressed upon our attention, which, in connection with the alleged possession of the defendant and his grantors, are worthy of consideration, as having some bearing upon the question whether this action so tardily brought should be entertained with favor. We refer to the conduct of the plaintiffs, and those under whom they claim, which is relied upon by the defendant as going to show an abandonment of their interest in the land. We do not, at this time, pass upon the weight of this evidence, but only

v.38M—14

consider its legal bearing.   There is evidence tending to show that this mortgage was paid in 1857, by the proceeds of another mortgage upon the same land for a larger amount then given, yet this mortgage was allowed to stand as an apparent lien upon the land for a period of 13 years, and the apparent incumbrance was never discharged, except as, by the foreclosure complained of, it became merged in the apparent title acquired under it.   The neglect to pay the taxes, and the adverse possession since about 1873, have already been referred to.   These things are important only as they may, with other circumstances, conduce to disclose the *reason* why these persons took no such interest in their property as to have induced some measure of prudence for its preservation from loss, and a more prompt effort to remove this cloud.   If the real reason why this action was not brought years ago was not because they were ignorant that their title had been clouded, but because they did not propose to redeem the land from its incumbrances, nor to attempt to protect and preserve their estate, until, after many years of neglect, they changed their purpose upon discovering that the land had come to be of very great value, such a speculative course of conduct would afford a reason why their suit should not now be entertained as against innocent purchasers whose misfortune might be traced to that neglect.   Even if the original owners were actually ignorant of the foreclosure and of the adverse possession, if that ignorance was attributable to the fact that they then proposed to abandon their property to whoever might acquire it under its incumbrances, or by tax title or otherwise, such neglect and indifference as to their own estate would constitute laches, especially as respects innocent purchasers.   Nor would it be a sufficient answer for the original owners to say that they did not expect, and had no reason to expect, that their estate would pass from them in just *this* way by the foreclosure of *this* mortgage.

We are of the opinion that in rejecting the evidence offered the learned judge did not fully appreciate its effect as bearing upon the equities of the respective parties, and that there should be a new trial.

Ordered accordingly.