### SAGE v. WINONA & ST. P. R. Co. et al.

(Circuit Court of Appeals, Eighth Circuit. October 2, 1893.)

#### No. 224.

1. LACHES—RAILROAD LAND GRANTS.

A land-grant railroad company, having both actual and constructive notice, is guilty of laches in delaying 14 years to assert title to lands lying within its grant limits, which have been selected as indemnity lands by another land-grant company, certified as such to the state, and by it conveyed to the company, and large portions of which have been openly sold by the latter to purchasers and settlers; especially when, by such delay, documentary evidence has been lost which would probably render unassailable defendant's title to a large portion of the disputed lands. Railway Co. v. Sage, 1 C. C. A. 256, 49 Fed. Rep. 315, 4 U. S. App. 160, followed.

2. SAME—QUIETING TITLE—PLAINTIFF OUT OF POSSESSION.

The rule that neither limitations nor laches is available as a defense to a bill to remove a cloud from title is applicable only when complainant is in possession.

3. FEDERAL COURTS—FOLLOWING STATE DECISIONS.

The federal courts in Minnesota will follow the rule of the local courts permitting suits to remove cloud from title to be brought by one out of possession.

Appeal from the Circuit Court of the United States for the District of Minnesota. Affirmed.

Statement by THAYER, District Judge:

This was a suit brought by the Hastings & Dakota Railway Company, hereafter termed the "Hastings Company," against the Winona & St. Peter Railroad Company, hereafter termed the "Winona Company," and the Winona & St. Peter Land Company, to settle the title to a large quantity of land situated in the state of Minnesota, which was claimed by the railway companies, respectively, under different overlapping land grants. Before the suit was brought to a final hearing, Russell Sage, the appellant, became vested with all of the rights of the Hastings Company, and was thereupon substituted as complainant.

The bill of complaint contained the following allegations, in substance: That by an act of congress approved on July 4, 1866, (14 Stat. 87, 88,) there was granted to the state of Minnesota, for the purpose of aiding in the construction of a railroad from Hastings, in the state of Minnesota, through the counties of Dakota, Scott, Carver, and McLeod, in said state, to such point on the western boundary of the state as its legislature might determine, every alternate section of land designated by odd numbers to the amount of five full sections per mile on each side of said road; that by an act of the legislature of the state of Minnesota, of date March 7, 1867, the aforesaid grant was accepted by the state, and all of the lands, interests, rights, powers, and privileges granted thereby to the state were conferred upon the Hastings Company, and the western terminus of its road was fixed by the terms of said legislative act at any point on the western boundary of the state of Minnesota between the Big Stone lake and the third standard parallel; that the Hastings Company thereupon surveyed a line of railroad on the route above indicated, and caused a map of definite location to be filed in the general land office of the United States on June 26, 1867, and subsequently constructed and completed said line of road in full accordance with said act of congress, and thereby became entitled to all of the odd numbered sections of land lying within 10 miles of its located line, to which no homestead or pre-emption claims had attached prior to June 26, 1867, when its map of definite location was filed. The bill further showed that under and by virtue of certain acts passed by the legislature of the territory of Minnesota, and by the legislature of the state of Minnesota, the Winona Company was duly incorporated, and became entitled to such lands as were granted to the territory of Minnesota by an act of congress approved March 3, 1857, (11 Stat. 195, 197,) in aid of building a line of railroad from Winona, Minn., via St. Peter, to a point on the Big Sioux river south of the forty-fifth parallel, and also to such additional lands as were granted to the state of Minnesota in aid of building the same line of road by a subsequent act of congress, approved March 3, 1865, (13 Stat. 526, § 1;) that the Winona Company thus became entitled to all of the odd-numbered sections of land lying within 10 miles of its road, to which no homestead or pre-emption claims had attached at the date of its definite location, with the right to make up for any deficiency that might be occasioned by locations under the homestead and pre-emption laws, by selecting other odd-numbered sections lying within 20 miles of its road. It was further alleged that, to make up for losses within the granted limits of the Winona Company, there was selected in its behalf certain odd-numbered sections of land (the same being the sections now in controversy) which lay within 10 miles of the located line of the Hastings Company, and were thus within its granted limits; that the said lands so selected for the Winona Company were each and all selected subsequent to June 26, 1867, after the road of the Hastings Company was definitely located; and that said lands of right belonged to the Hastings Company. It was further shown by the bill that the lands now in controversy, which were selected for the Winona Company to make up for losses within its granted limits, all lay within 20 miles of the road of the Winona Company; that they were certified to the state of Minnesota by the secretary of the interior for the benefit of the Winona Company as lands properly belonging to it; and that the state had duly conveyed them to the Winona Company. In view

of the premises, the bill charged that the Winona Company, and all persons to whom it might have conveyed any portion of said lands, held the title thereto in trust for the Hastings Company, and it accordingly prayed that the Winona Company, and its codefendant, the Winona & St. Peter Land Company, to which, as the bill showed, some of the lands had been conveyed might be decreed to hold the title of said lands in trust for the Hastings Company, and that they might be compelled to account for the proceeds of all of said lands which they had severally sold.

The answer of the Winona Company (so far as it is deemed material to state its contents) averred, in substance, that all of the lands in controversy in this suit were withdrawn from the market by the secretary of the interior, and were reserved for the Winona Company in aid of building its road, as early as February 12, 1867, some months before the Hastings Company filed its alleged map of definite location, and that the latter company acquired no right to any of said lands by filing said alleged map on June 26, 1867. The Winona Company further alleged that a large portion of the lands in controversy were certified to the state of Minnesota by the secretary of the interior for the benefit of the Winona Company, as early as March 11, 1868, and were conveyed by the state to the Winona Company on September 2, 1868; that the residue of the lands were thus certified to the state for the Winona Company on April 3, 1871, and were conveyed by the state to the railway company on February 26, 1872. In view of the latter facts the defendant companies pleaded laches and the statute of limitations as a bar to the action.

The circuit court on the final hearing dismissed the bill, and the complainant has appealed from such decree.

Jared How and J. M. Gilman, (Homer E. Eller, on the brief,) for appellant.

Thomas Wilson, (Lloyd W. Bowers, on the brief,) for appellees.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

THAYER, District Judge, after stating the case as above, delivered the opinion of the court.

The record before us discloses that the case at bar, in all of its essential features of pleading and evidence, is like the case of Railway Co. v. Sage, (8th Circuit,) 4 U. S. App. 160, 1 C. C. A. 256, 49 Fed. Rep. 315, which was recently decided by this court. The lands now in controversy lie within the appellant's granted limits, as defined by the act of July 4, 1866, and also within the indemnity limits of the appellee railway company. They aggregate something over 47,-000 acres, are of the alleged value of $240,000, and appear to be distributed along the line of the appellant's road from range 29 W. to and including range 42 W.

It is shown by the testimony that a portion of the lands which are claimed by the appellant were certified to the state of Minnesota by the general government, as lands which of right belonged to the Winona Company, and that they were conveyed by the state to the latter company nearly 18 years before the present bill was filed, and that the residue of said lands were so certified and conveyed to it more than 14 years before the commencement of the present proceedings. In the mean time,—that is to say, from the years 1868 and 1872, respectively, when the lands were deeded to the Winona Company,—that company has openly dealt with them

as its own, by advertising them extensively for sale, and by contracting to convey, and by conveying, a large portion thereof to its codefendant, the Winona & St. Peter Land Company, which has likewise dealt with them as its own, and by making numerous sales and conveyances of other portions of the land to actual settlers, who have entered upon and improved their several holdings. The facts disclosed by the record leave no room for doubt that the appellant's predecessor in interest, the Hastings Company, had actual as well as constructive notice, many years before the present bill was filed, that these lands had been certified to the state, that the state had deeded them to the Winona Company, and that many persons were purchasing and settling on the lands, and were making valuable improvements thereon, under deeds from the Winona Company, in the belief that such deeds conveyed to them an indefeasible title. It further appears that notwithstanding such knowledge, actual and constructive, the Hastings Company failed to assert any claim to the lands, or to take any action looking to the establishment of its alleged right, until the year 1886, when the present suit was instituted, although its road was in process of construction from and after the year 1870, and was completed past the lands now in dispute to the western boundary of the state by December 1, 1879.

Moreover, the present record shows that through lapse of time the Winona Company has lost certain documentary evidence which would probably have rendered its title unassailable to all of the lands now in dispute that lay in and east of range 38, if this suit had been more seasonably brought. It appears that a letter was written by the commissioner of the general land office on July 10, 1865, directing the register and receiver of the land office at St. Peter, Minn., to withhold from pre-emption, homestead, and private entry certain odd-numbered sections lying within the indemnity limits of the Winona Company. The original letter directing such a withdrawal in favor of the Winona Company has been lost, and on the trial below the appellees were compelled to produce what purported to be a copy of said letter, which was in fact a copy of a copy of the original letter, the original having been recorded in the office of the commissioner of the general land office. The copy, upon which the appellees are compelled at this time to rely, contains an order made on July 10, 1865, for the withdrawal of all odd-numbered sections within the 10 and 20 mile limits of the Winona Company, (the same being its indemnity limits,) "to the west line of township twenty-eight west." As there is no such township in the state of Minnesota as "number twenty-eight west," it is claimed by the appellant that the order of withdrawal was void for uncertainty, and that the subsequent grant to the Hastings Company, of July 4, 1866, took effect, even within the limits intended to be embraced by the order of withdrawal, no matter what such intended limits may have been. On the other hand, it is urged by the appellees that on July 10, 1865, all odd-numbered sections within the indemnity limits of the Winona Company were withdrawn for its benefit, to the west line of range 38 W.; that the original

letter of the commissioner of date July 10, 1865, and accompanying diagrams, would show such fact if the same had not been lost, and that a mistake was made in copying the original letter into the records of the land department, from which record the copy now in evidence was obtained. There are several circumstances which strongly support such contention on the part of the appellees, even if they do not demonstrate that all of the odd-numbered sections lying in and east of range 38 were withdrawn from entry and sale for the benefit of the Winona Company on July 10, 1865, and were for that reason beyond the reach of the grant to the Hastings Company of July 4, 1866. But we do not allude to the letter of July 10, 1865, at this time, for the purpose of deciding that it operated as an effectual withdrawal of all the lands in and east of range 38 for the benefit of the Winona Company. We refer to the loss of that letter, in this connection, simply for the purpose of showing to what extent the title of many persons to large and valuable tracts of land has been jeopardized and put in peril by the loss of documentary evidence on which that title depends, solely through the failure of the Hastings Company to assert its alleged right at an earlier day.

In view of what has already been said, and without stating the facts more in detail, we are of the opinion that the plea of laches is fully sustained by the state of facts disclosed by the present record, for reasons that were stated at considerable length in the former case of Railway Co. v. Sage, supra, and which we need not now repeat.

But it is urged in opposition to this view, by the appellant's counsel, that the bill shows that the grant to the Hastings Company under the act of July 4, 1866, was a grant in praesenti; that by filing its map of definite location on June 26, 1867, it became vested with the title to all of the free odd-numbered sections within 10 miles of its road; and that upon the completion of its road such title became absolute and took effect by relation as of date June 26, 1867, without the necessity of any further conveyance from the general government or the state of Minnesota. In view of these several propositions, it is further claimed that it was unnecessary for the Hastings Company to pray, as it did, for a decree divesting the Winona Company of the legal title to the lands in dispute, and vesting the same in the complainant company; that the legal title was at the time, and is now, well vested in the complainant; that the relief demanded in the bill was originally misconceived, and was unnecessary; and that notwithstanding the prayer for specific relief, and the allegation that the legal title is held in trust for the complainant, the court should now retain and treat the bill as one filed by the owner of the legal and equitable title to remove a cloud therefrom; and it is further insisted that in such an action neither the plea of laches nor limitations is available to the appellees as a defense. We shall not pause to discuss the question whether, at the time of the filing of the bill, the Hastings Company was in fact vested with the legal and equitable title to the lands, as is now claimed, or whether it misconceived the relief to which it was then

entitled. If that contention is tenable, it would necessarily lead to the consideration of the further question—whether, being out of possession and holding a perfect legal title to the lands now in dispute, the Hastings Company could in that event maintain its standing in a court of equity, where it now finds itself. We accordingly overlook these latter questions, and pass to the more important contention of appellant's counsel, on which its right to relief ultimately rests,—that neither the plea of laches nor limitations is available as a defense to a bill to remove a cloud from one's title. There is some conflict of authority touching the right of the legal and equitable owner of lands, who is out of possession, to maintain a bill to remove a cloud from the title. The right in question has been denied on several occasions by the supreme court of the United States, but from an early day such right has been conceded to an owner out of possession of the courts of Minnesota, and in a case coming from that state we would undoubtedly be justified in following the rule which obtains in the local courts. Frost v. Spitley, 121 U. S. 552, 556, 7 Sup. Ct. Rep. 1129; Orton v. Smith, 18 How. 263; Donnelly v. Simonton, 7 Minn. 167, (Gil. 110;) Hamilton v. Batlin, 8 Minn. 403, (Gil. 359.)

But, while conceding to the holder of the legal and equitable title who is out of possession the right to maintain a bill to remove a cloud from the title, we are not able to concede that in such cases the defendant is disabled from pleading either laches or limitations. It is manifest, we think, that the latter doctrine can only be invoked by a complainant in a bill to remove a cloud upon his title when he is in possession, and the adjudged cases show that the doctrine has only been applied under those circumstances. Schoener v. Lissauer, 107 N. Y. 111, 13 N. E. Rep. 741; Miner v. Beekman, 50 N. Y. 337, 343.

There are obvious reasons why the holder of the legal and equitable title to lands, who is in possession of the same, should not be confronted with the plea of laches when he files a bill to cancel some void or invalid conveyance which operates as a cloud upon his title. Possession of the premises by the true owner is good and sufficient notice to the world of his rights therein, by reason of which third parties need not be prejudiced by any dealings they may have with the holder of the invalid conveyance, while the existence of the cloud is a continuing injury like a public nuisance. Under such circumstances, no harm can result in holding that no period of delay on the part of the owner in asserting his right to have the cloud removed will bar him of his remedy. But the case is far different when the person filing such a bill is out of possession and the person proceeded against is in possession, or, if not in actual possession, is the holder of a record title that is without any apparent flaw or defect. In such cases the doctrine that neither laches nor limitations can be invoked as a defense to a bill filed to remove a cloud upon a title has no just application, and, if tolerated, would frequently lead to gross injustice. It will accordingly be found that in the state of Minnesota, where the rule prevails that a person out of possession may maintain such an action, and the fact that he is out

of possession constitutes no defense, it is nevertheless held that, when such a bill is filed by a person not in actual possession of the disputed premises, the party proceeded against is at liberty to plead either laches or limitations as a defense. Bausman v. Kelley, 38 Minn. 197, 204, 36 N. W. Rep. 333.

We are accordingly of the opinion that the ground upon which the learned counsel for the appellant have attempted to evade the plea of laches interposed by the Winona Company, is untenable, and, so holding, the decree of the circuit court must be in all things affirme