ANNIE E. SIMONTON v. CONNECTICUT MUTUAL LIFE INSURANCE
COMPANY and Others.[1]

June 19, 1903.

Nos. 13,346, 13,382—(146, 155).

**Foreclosure of Mortgage—Valid and Invalid Sales.**

The plaintiff executed a mortgage, containing the usual power of sale,
to the defendant, upon two lots, and made default in its conditions. The
defendant then caused the usual notice of foreclosure by advertisement
to be published and served, wherein it was stated that at ten o'clock a.
m. of a day named the mortgage would be foreclosed by a sale of the
lots to be made by the sheriff. On the day named the plaintiff's agent
appeared at the place of sale, and at fifteen minutes past ten o'clock di-
rected the sheriff to offer the lots for sale. He did so, and five minutes
thereafter, and before the defendant had appeared, he sold the lots on the
bid of the agent to the plaintiff for one-ninetieth of the amount of the
mortgage lien, although the value of the lots was then greater than the
total amount of the lien. The agent then left without paying or tendering
the amount of his bid, and five minutes thereafter the attorney of the de-
fendant appeared. From this time until ten minutes before eleven o'clock
the sheriff was engaged in making other mortgage sales for the defendant
at the same place. He then, by the direction of the attorney, again of-
fered the lots for sale pursuant to the notice. The agent was then duly
notified that the lots were so offered for sale, and that he would be given
an opportunity to be present and bid, if he desired, but he declined to
avail himself of the opportunity. The lots were then sold by the sheriff
at ten minutes after eleven o'clock to the defendant upon its bid for the
full amount of the lien. The usual certificate of sale was made to the de-
fendant, but none to the plaintiff, although she tendered, shortly after the
lots were sold to the defendant, the amount of her bid. The only persons
present at any time at the place of sale were the sheriff, the agent, and
the attorney. *Held*, that the sale to the defendant was valid, and the one
to the plaintiff invalid.

Cross appeals by plaintiff and defendant Connecticut Mutual Life
Insurance Company from a judgment of the district court for Ramsey
county, entered pursuant to the findings and order of Otis, J. Modi-
fied.

[1] Reported in 95 N. W. 451.

*Charles H. Taylor,* for plaintiff.
*Markham & Markham,* for defendant.

The alleged sale to the respondent was not voidable merely, by reason of the gross inadequacy of the amount bid, but is absolutely void for several reasons.

1. Neither the sheriff nor his deputy had, prior to the time the property was offered for sale and struck off to the appellant, been directed to make any sale of the property.

2. No sufficient memorandum of the agreement of sale was made and signed by the sheriff, as required by the statute of frauds.

3. Edward Simonton, who assumed to bid at the alleged sale, is the husband of the respondent and could not act as her agent in the purchase of this property, even if she had attempted to authorize him so to do, which she did not.

4. The sale was for cash and no money was paid or tendered to the sheriff or his deputy by the respondent at the time of her bid, or within a reasonable time thereafter.

5. The bid made by the respondent was not made in good faith, but in pursuance of a fraudulent design to cheat and defraud the appellant out of its mortgage lien upon the property.

Under the statute as it now stands, it is provided that the sheriff shall conduct the foreclosure sale, when one is actually made, but there is no suggestion of a power conferred upon the sheriff to make a sale until he is directed to do so, by some person authorized to give such direction. The power of sale contained in the mortgage is a common law power, not dependent upon any statute. The statute simply regulates the manner of exercising the power, and provides in effect that when a mortgagee wishes to exercise the power and make a sale thereunder, he shall procure the service of the sheriff to conduct the sale, and this is done in order to guaranty that the sale shall be conducted honestly and impartially, and in no way disposes of or changes the right and duty of the mortgagee to direct the sale, when he wishes one to be made.

The memorandum of sale made by the sheriff, at the time of the pretended sale to respondent, does not comply in any way with the requirements of the statute of frauds, and no attempt was made to

prove a partial performance of the contract, such as would take the case out of the statute. Although there seems to have been formerly some doubt upon the subject, it is now clearly settled by an overwhelming weight of authorities that sales of this kind come within the statute of frauds, and that unless the sale is immediately consummated or the agreement partially performed, by the payment of the price bid, or the execution of the sheriff's certificate, there must be a written memorandum of the agreement and this must be signed by the party making the sale.

Auction sales made by a sheriff are within the statute and the same rule applies to such sales, or contracts of sale, as to contracts of sale between private individuals. Browne, St. Fr. (5th Ed.) §§ 264, 369; Chitty, Cont. 271.

Edward Simonton had no authority whatever, of any kind, as a matter of fact; and further, the statute expressly prohibits any agency between husband and wife to deal with the real property of the other. This is a matter of public policy, as well as a protection to the wife. It would not be contended that the husband could act as the agent of the wife in converting her real property into personalty, and there is no good reason why he should be allowed to convert her personal property into real estate, which she could not dispose of without his joining in her deed. We think that the statute, construed as a whole, shows that the one is prohibited as well as the other. Furthermore it is contrary to public policy to allow the husband to traffic in real estate in the name of the wife, who knows all or nothing of his transactions in her name, as suits his or their convenience.

The sheriff must sell for cash, and the payment must be made at once, unless the mortgagee consents to future payment. Sauer v. Steinbauer, 14 Wis. 76; Negley v. Stewart, 10 Serg. & R. 207; Atkins v. Tutwiler, 98 Ala. 129; Jones v. Thacker, 61 Ga. 329.

It has not been contended, and we believe could not be contended successfully, that the sale to appellant was void because not made promptly at ten o'clock, for a public sale advertised for a particular hour may be made any time during that hour, and need not be made on the first minute of the hour. Thus it is always—in this connection—ten o'clock until it becomes eleven o'clock, and a sale begun within the hour is good, although it may not be consummated until

later; especially so, where no prejudice is shown to have resulted to the mortgagor. Erwin v. Hall, 18 Ill. App. 315; McGovern v. Union, 109 Ill. 151; Lester v. Citizens, 17 R. I. 88; 26 Am. & Eng. Enc. (1st Ed.) 912.

START, C. J.

This is an action to establish an alleged sale of land to plaintiff on the foreclosure of a mortgage by advertisement, and to compel the sheriff to issue to her a certificate of such sale, and also to have an alleged foreclosure sale of the land to the defendant adjudged void, and the certificate and record thereof, and the lien of the mortgage, cancelled. The trial court made its findings of fact, and as conclusions of law directed judgment to the effect that neither of the parties acquired any right, title, lien, or interest in or to the land by the alleged sales, or either of them; and, further, that the lien of the defendant's mortgage was not affected by either sale, and that it still had the right to foreclose the mortgage by virtue of the power of sale therein. Judgment was so entered, from which both parties appealed.

The questions raised by the cross-appeals are practically the same, and will be considered together. The facts found by the court are substantially these: On May 2, 1898, the plaintiff was the owner of lots 8 and 9, in block 2, of Terrace Park addition to St. Paul, lot 9 being her homestead. On that day she and her husband, to secure the payment of $14,000 borrowed by her from the defendant, duly executed to it a mortgage on the lots, which contained the usual power of sale, and was duly recorded. She made default in the payment of interest and taxes, which she was required to pay by the conditions of the mortgage, and thereupon the defendant initiated proceedings for the foreclosure of the mortgage by advertisement. To this end it caused a notice of foreclosure sale in the usual form to be published and served, in which it was stated that the lots would be sold by the sheriff on June 30, 1902, at ten o'clock a. m., at the main entrance to the court house, on the Cedar street side thereof.

On the day of the sale, and prior thereto, the plaintiff authorized her husband, Edward Simonton, who is an attorney at law, to attend the sale and protect her interests, but he did not have any money for purchasing the property or any part thereof at the sale. He appeared at

the place of sale shortly prior to the hour fixed therefor, and there remained until the hour of ten o'clock in the forenoon, at which time he, as agent of plaintiff, requested and urged the deputy sheriff having charge thereof to forthwith proceed and offer the premises for sale pursuant to the notice. The defendant was not then present. Thereupon the deputy by telephone notified its attorney having the matter in charge of the pending sale, and was informed by the attorney that he would presently appear for the purpose of attending the same. After waiting a reasonable time to enable the attorney to appear, and until fifteen minutes after ten o'clock, the deputy, at the request of Mr. Simonton, read the notice of sale, and pursuant thereto offered the lots in separate parcels to the highest bidder therefor for cash, and thereupon, there being no other bidders, Mr. Simonton bid, in plaintiff's name, for each of the lots the sum of $100, and the deputy then and there struck off each of them separately to her for $100 for each lot, and made in his official book of sales a pencil memorandum thereof, but he did not attach his signature thereto. It was twenty minutes after ten o'clock when this was done. Mr. Simonton, as agent or otherwise, had no money with him to pay, and was unable then and there to pay the amounts so bid, and went away without making any payment on account thereof, but he directed the deputy to prepare the usual papers necessary to consummate the sale, and stated that he would shortly return with the money and pay him the amount so bid, to which the deputy made no objection or reply, nor did he longer hold open the sale. Five minutes after this the defendant, by its attorney, appeared at the place of sale, and thereupon at his request the deputy proceeded to make other foreclosure sales for the defendant, and after the same were completed, and not earlier than ten minutes before eleven o'clock, the deputy was by defendant's attorney directed to again offer the mortgaged premises for sale in separate parcels, pursuant to the notice, which he proceeded to do, and the defendant upon such offer bid for lot 8 the sum of $7,500 and for lot 9 the sum of $10,548.95, aggregating the sum of $18,048.95, which was the full amount then due on the mortgage; but, before striking off the same to the defendant for the amounts so bid, the deputy, at the request of defendant's attorney, notified Mr. Simonton by telephone that the property was again being offered for sale, and that if he

desired he would be given an opportunity to bid for the same upon such offer, but he declined to avail himself of such opportunity, and thereupon, at ten minutes past eleven, the deputy struck off the property to defendant for the amounts so bid.

When the premises were so offered for sale and struck off to defendant, there was no one present except the deputy and the attorney, and no other bids were made or received. In a few minutes thereafter Mr. Simonton returned and tendered to the deputy sheriff the several sums so by him bid as plaintiff's agent for the premises, and demanded that the deputy execute and deliver to the plaintiff the usual sheriff's certificate and other evidence of sale, which was refused by the deputy. The plaintiff has kept the tender good, and has brought the amount thereof into court for the benefit of the defendant. The usual certificate and proofs of sale were made by the deputy sheriff and delivered to the defendant, which were duly recorded. The lots at the time of the sale were worth all and more than the bid therefor by the defendant. The amount bid therefor by the plaintiff was grossly inadequate—a mere nominal sum in comparison with the actual value of the lots. Do these facts sustain the conclusions of law and the judgment of the district court? This is the principal question for our consideration.

1. There can be no fair doubt of the correctness of the conclusion of the court so far as it relates to the alleged sale to the plaintiff. She comes into court asking its aid in the consummation of a scheme whereby a lien on her property, voluntarily created by herself, to secure an honest debt of $18,000, including interest and taxes, may be extinguished by the payment of one-ninetieth of the amount of the lien, although the value of the mortgaged premises exceeds the amount of the lien. It is unthinkable that any court would exert its equitable powers to grant the claim of a suitor for relief under the circumstances disclosed by the admitted facts in this case, for the inequity of the claim is so brazen that it would be a reproach to the administration of justice to do so. But counsel for the plaintiff insists that the sale to her is legal, and that she is before the court simply insisting on her legal rights. Waiving the objection that this claim is not in accord with the allegations and prayer of her complaint, we are of the opinion that the sale to her was unauthorized, and that she acquired no rights

thereby. This conclusion rests upon the proposition that only the mortgagee, his agent, attorney, executor, administrator, or assignee, can exercise the power of sale in a real estate mortgage. Bausman v. Kelley, 38 Minn. 197, 36 N. W. 333.

To permit the sheriff, upon the request of the mortgagor or on his own motion, to sell the mortgaged premises in the absence of the mortgagee, simply because the latter had given notice that at a given time and place the mortgage would be foreclosed by a sale of the mortgaged premises to be made by the sheriff, would lead to most serious consequences to the interests of the mortgagee. It is not necessary to look beyond the facts of this case for an illustration of the injustice which might be perpetrated under the forms of law if the mortgagor had a right to direct the sheriff to sell, and have the mortgaged premises sold, in the absence of the mortgagee. It is true that the sheriff is not the agent of either of the parties in making the sale, but the agent of the law to secure a fair sale. His power and duty in the premises, however, do not begin until he is called upon to officiate at the sale by the mortgagee. The mere fact that the mortgagee publishes and serves a notice of foreclosure is not such a request or direction. The claim of the plaintiff to the contrary, in its last analysis, is simply that the mortgagor may foreclose the mortgage by advertisement on his own terms, in the absence of the mortgagee and without his consent.

Prior to 1866 sales on the foreclosure of real estate mortgages by advertisement could be made either by the person appointed for that purpose in the mortgage or by the sheriff, and in either case the mortgagee was authorized to purchase at the sale. R. S. 1851, c. 85, §§ 6, 9. This led to abuses, for in practice a party selected by the mortgagee, or the mortgagee himself, was named in the mortgage as such person. The object of the amendment made by G. S. 1866, c. 81, § 7, was to prevent such abuses by providing that such sales must be conducted by a disinterested party—the sheriff. It is apparent from this history of the present statute that it was not intended thereby to invest the sheriff with the powers of a trustee for the enforcement of the mortgage security, or to give him any authority to execute the power by a sale of the mortgaged premises on his own motion or that of the mortgagor.

It follows that the sale in this case to the plaintiff was unauthorized, and she could acquire no rights by virtue thereof unless the defendant ratified it. But the defendant did not do so. On the contrary, its attorney at once repudiated the sale, and directed the sheriff to offer the lots for sale pursuant to the notice. Therefore the rights of neither party were affected by the attempted sale of the lots to the plaintiff.

2. This brings us to a consideration of the validity of the sale to the defendant. The first contention of the plaintiff in reference to this sale is that the sale to the plaintiff was closed and completed, and so considered and treated by all parties, whereby the power of sale was exhausted, and no other sale could be legally made by virtue thereof, or in any event until such sale was set aside by the court. If the assumed premises be correct, the conclusion would seem to follow logically. But the premises are not correct, for the mortgagee is a party to proceedings to foreclose his mortgage. The assertion that all parties to the proceedings to foreclose the mortgage in question considered and treated the sale to the plaintiff closed and completed is wholly unsupported by the record, for the contrary conclusively appears therefrom. Again, as already stated, neither the mortgagor nor the sheriff had any right whatever, without the consent of the mortgagee, to deal at all with the power of sale, and, their attempt to do so having been repudiated by the mortgagee, it was a nullity, and could not exhaust or in any manner affect such power.

The case of Paquin v. Braley, 10 Minn. 304 (379), is not here in point, for the facts in that case were the reverse of the facts in this case. The mortgagee in that case, on a foreclosure of his mortgage by advertisement, bid at the sale $500 for one tract of the mortgaged premises, and it was sold by the sheriff conducting the sale to him for that sum, and the sale closed. Fifteen to twenty minutes thereafter the sheriff, at his request, again offered the same tract for sale, and he bid therefor $542.26, and it was sold to him for the amount of his bid. The court correctly held that the power of the sheriff to sell was exhausted by the first sale; hence the second one was a nullity.

The plaintiff also urges, in effect, that the sale to defendant ought not to be sustained, even if it be held that the attempted sale to the plaintiff was unauthorized, for the reason that it was not completed until ten minutes after eleven o'clock, and after the agent of the mortgagor

and the bidders had left the place of the sale. Whether a sale so made should be sustained by the courts would depend on the circumstances of each particular case. A foreclosure sale cannot be legally made before the hour named in the notice, and ordinarily it cannot be made after the expiration of the hour, unless actually commenced— that is opened—within the hour. Richards v. Finnegan, 45 Minn. 208, 47 N. W. 788; Lester v. Citizens, 17 R. I. 88, 20 Atl. 231; Erwin v. Hall, 18 Ill. App. 315; McGovern v. Mutual, 109 Ill. 151. The sale in this case to the defendant was opened before the expiration of the hour, and the failure to complete it within the hour was justifiable and necessary for the purpose of notifying the plaintiff's agent, so that he might be present if he so desired. Under these circumstances, the mere fact that the sale was not completed within the hour does not affect its validity.

The objection that the second sale was not made until after the agent and bidders had left the place of sale remains to be considered. It may be conceded that where mortgaged premises are in form offered for sale and sold by the sheriff at a foreclosure sale, and the mortgagor and bidders then depart, and the premises are again offered for sale and sold, such sale will be set aside at the suit of the mortgagor, although the first sale was unauthorized, unless it conclusively appears that he has not been prejudiced thereby. That the plaintiff was not and could not have been prejudiced in any manner by the sale of the lots to the defendant conclusively appears from the record. From first to last there were present at the place of sale only the sheriff, the plaintiff's agent, and the defendant's attorney. There were no bidders who dispersed before the second sale was made, or who were deterred from bidding. Any irregularities in the conduct of the sale were due to the unjustifiable attempt of the plaintiff's agent to deprive the defendant of its security. It is true that he left the place of sale before the lots were offered for sale the second time, but he was notified of the fact, and afforded a reasonable opportunity to be present and bid if he so desired. It is also true that the sale to the defendant was fairly and in good faith made, and that the lots brought the full amount due on the mortgage. We hold, then, upon the undisputed facts of this case, that the sale of the lots to the defendant was valid, and that the attempted sale thereof to the plaintiff was invalid.

It is therefore ordered that the judgment appealed from be modified, and the case remanded, with direction to the district court to amend its conclusions of law and judgment so as to adjudge that the sale of the mortgaged premises to the defendant upon the foreclosure of its mortgage is valid, and that the attempted sale thereof to the plaintiff is invalid, and that she acquired no rights thereby.

Judgment modified.