THE STERLING LUMBER COMPANY v.
THOMPSON, SHERIFF,
LUCAS, ET AL., INTERVENERS

(No. 1862; February 18, 1935; 41 Pac. (2d) 264)

520

For the plaintiff, there was a brief by *McConley & McConley,* of Sterling, Colorado, and *W. E. Hardin,* of Lander, and oral argument by *Mr. George E. McConley, Jr.*

522

For the interveners and respondents, the cause was submitted on the brief of *John J. Spriggs,* of Lander.

RINER, Justice.

The Sterling Lumber Company, a Colorado corporation, as plaintiff, brought an action in replevin in the District Court of Fremont County, against the defendant James W. Thompson, as Sheriff of said county, to recover possession of one Osgood heavy duty, one yard, gas shovel, together with jacks and equipment, situate on certain lots in block 3 of the Town of Lander, Wyoming. Subsequently, W. J. Lucas, Albert Myers, and E. W. Clark, as Receiver of Federal Surety Company, requested and were given leave to intervene. A money judgment having been entered by the court in favor of each of the intervenors, against the plaintiff and its surety on the replevin bond, the United States Fidelity & Guaranty Company, said plaintiff has brought the case here for review by direct appeal.

We are asked, by motion, to dismiss the appeal proceedings for a number of reasons. It is said that the authentication of the clerk, attached to the record, fails to show service of the notice of appeal, and we are referred to the case of Simpson v. Occidental Building & Loan Association, 45 Wyo. 425, 19 P. (2d) 958. We find, however, that the clerk's certificate states, as pointed out in the cited case, it should properly do, that the record is "true and correct," and that said

record includes therein the proof of service. In the Simpson case, the certificate undertook to enumerate each of the sundry papers comprising the record and to certify each; the proof of service was not included in the list thus certified and, hence, the certificate was defective. The simple form of certification employed in the case at bar and which the statute governing the matter prescribes, was not used. The point urged is not well taken.

The contention is presented that the authentication of the record is defective in failing to show the entry of the judgment from which this appeal was taken but, as already indicated, it is plain that the clerk's certificate was one such as the statute requires, in fact employing its exact language. It is quite unnecessary that the certificate itself disclose the entry of the judgment, so long as the record to which it is attached supplies that information. It is insisted additionally that this fact nowhere appears in that document. We think otherwise. Upon examination, we find in the record a certification, by the clerk of the District Court of Fremont County, of all the journal entries in the case as "true and correct copies" thereof, "including the judgment entered therein as the same appears upon the journal of the court." Turning to the copy of the judgment thus certified, it is noted that immediately preceding the title of the cause, after the volume and page of the journal are given, appears the statement, "Friday, July 14, 1933." Consequently, it is perfectly obvious that the judgment was entered on that date.

It appears that the court granted several extensions of time, within which to file the record on appeal, beyond the statutory seventy day period. All the intervenors joined in and filed a protest against the court's granting the first extension. After it had been given,

the intervenors Myers and Lucas filed a motion to set aside the order to that effect. It seems to be urged that this order was void because it was entered without a hearing had on the protest and no attention was paid to the motion to set aside that order; accordingly, the claim is made that the record was not filed in time. Assuming that there was such a showing by the protest as required that a hearing should have been granted, a question not at all free from doubt, and assuming also that the matter as it now stands is one which is entitled to be reviewed here, so far as we can tell from what is before us, it is plain that no attempt whatsoever was made to get the court to act on either the protest or the motion to set the aforesaid order aside. Assuredly, it was the duty of intervenors to procure a ruling, if a review of the court's action was desired. They knew that the application for extension of the time to file the record had been filed by the appellant. They were aware that the case had been assigned to and was being handled by a non-resident judge, and that the presiding judge was then absent from the district. They very well understood, too, that time for filing the record was fast expiring and some action must necessarily shortly be taken, yet they did nothing, apparently, except to place in the files of the case in the clerk's office their protest and the motion. No satisfactory reason appears to be assigned why action on the part of the court was not involved. In the absence of a showing that proper consideration of intervenors' protest and motion was refused, we must conclude that such was not the fact. That being so, there is nothing for us to discuss relative to the merits of the contention.

It is asserted that the notice of appeal was not served on the attorneys for the intervenor, E. W. Clark as Receiver of the Federal Surety Company. But

their written signatures are attached to an acknowledgment of service, and no proof is in the record that they were not such or that they in any manner questioned the regularity of their acceptance of service. This point, also, is without merit.

The abstract of the record submitted by the appellant is sharply criticised by respondents in a number of particulars, and we are obliged to say, as regards most of them, deservedly so. Our Rule 37, relative to abstracts of the record in this court, states that "the court may dismiss the case or tax costs as the right of the matter may require," as the penalty to be imposed for a disregard of the rule. If the questions arising upon the merits of the record were not comparatively easily ascertainable, the transcript of the testimony so short, and we were not so thoroughly convinced that the right of the matter does not require a dismissal, we would unhesitatingly grant the motion to dismiss, for failure to obey the rule aforesaid. If counsel would only take the trouble to read and follow the requirements of our rules and our decisions under them, there would be no occasion for placing a paragraph of this nature in an opinion. We regret that we are obliged to do so here.

The motion to dismiss will be overruled, but the costs of preparing intervenors' brief in support of their motion will be taxed against appellant at the usual rate.

Passing to a consideration of the merits of the case, the facts necessary to be kept in mind as essential to a proper disposition of the matter are substantially these:

H. L. Scott and Guy Curlee, as a partnership doing business under the firm name of Scott & Curlee, were engaged in business as contractors, and subsequent to

August 15, 1928, they undertook the completion of certain road, bridge, and miscellaneous work on the Lander-Rawlins road on State Highway No. 87W in Fremont County, Wyoming, known as Project No. 162A, under a contract entered into on July 6, 1928, between them, and the State of Wyoming, acting through the State Highway Commission. On July 16, 1928, the partners aforesaid made a written application to and procured from the intervenor Federal Surety Company a contractor's bond, as required by law, for the faithful performance by them of the contract above mentioned. As a part of said application, they signed by their firm name and also individually an "Agreement of Indemnity" together with a sworn "statement of assets and liabilities," signed by both patrners and verified as true and correct by Curlee. In the agreement of indemnity appeared, among other provisions, the following:

"That for the better protection of the said Company, and as of the date hereof, the said Principal does hereby assign, transfer and convey to the said Company, all right, title and interest in and to all the tools, plant equipment and materials of every nature and description that said Principal may now or hereafter have upon said work, or in or about the site thereof, including as well materials purchased for or chargeable to said contract, which might be in process of construction, or storage elsewhere, or in transportation, to said site hereby assigning and conveying also all rights in and to all sub-contracts, which have been, or may hereafter be entered into and the materials embraced therein, and authorizing and empowering said Company, its authorized agents or attorneys, to enter upon and take possession of such tools, plant equipment, materials and sub-contracts, and enforce, use and enjoy such possession upon the following conditions, viz: This assignment shall be in full force and effect as of the date hereof, should the said Principal fail, or be unable to complete the said work in accordance with the terms of the contract covered by said bond, or in

the event of any default on the part of the said Principal under the terms of said contract."

In the sworn statement of assets and liabilities, under the heading "Encumbrances on Plant," it was recited that there was "due on Osgood 1 yd. heavy duty gas shovel $2500."

The partnership experienced financial difficulties. As a consequence, the Osgood Company, the vendor of the shovel aforesaid, threatened to repossess that device unless the balance due thereon was paid. In order to avoid losing this property which had been sold to the partnership by the Osgood Company under a conditional sale agreement which specifically provided that the title to the shovel should not vest in the purchaser until all sums due under it and the purchase price of the article sold had been paid in full, the appellant, The Sterling Lumber Company, on December 27, 1928, paid the vendor the balance due or $2248 and accrued interest, and received from it four promissory notes evidencing said indebtedness, these notes being endorsed to it without recourse together with an assignment of the conditional sale agreement securing said indebtedness. The agreement thus assigned appears to have never been recorded.

Previously and on November 16, 1928, the partners Scott and Curlee had executed and delivered to the appellant a chattel mortgage on the Osgood shovel referred to above together with other personal property employed in the work in connection with the road project aforesaid, to secure the sum of $15,375. This instrument was duly witnessed, was acknowledged by each of the partners, and was filed and recorded as a chattel mortgage in the office of the county clerk of Fremont County, Wyoming, on January 16, 1929, at 9 A. M., as No. 119958. On the same date and at the same hour, there was filed for record in the office

aforesaid an instrument given No. 119959. This purported to be a copy of the "Agreement of Indemnity" given by Scott and Curlee to the Federal Surety Company, under date of July 16, 1928, as related above. In fact, a certification that it is such appears appended to it, sworn to on January 14, 1929, by one Grace R. Bragg. Who she is, however, does not appear. The instrument purports, also, to be signed simply "Scott & Curlee," the signatures of the partners not appearing to be affixed at all. It has already been noted that the original "Agreement of Indemnity" carried the signatures of each member of the partnership.

Thereafter and on June 12, 1929, the State Highway Commission declared the partnership of Scott and Curlee in default for failure to perform the contract aforesaid in accordance with its terms and, pursuant to the Commission's demand, the Federal Surety Company, as surety on the contracting partnership's bond, subsequently completed the work required.

On account of the nonpayment of principal and interest due and to secure which the chattel mortgage aforesaid was given, it was foreclosed by advertisement and, pursuant to the power of sale therein contained, the property was sold on November 11, 1930, at public auction. The Osgood shovel was at that time purchased, together with most of the other property sold, by the appellant at this mortgage sale, and it received a certificate of sale therefor.

On the 11th day of December, 1931, two judgments, one in favor of W. J. Lucas for $623.56 and costs, and the other in favor of Albert Myers for $329.10 and costs, were entered in the district court of Fremont County, Wyoming, against the Federal Surety Company. The same day executions were sued out under these judgments and the Sheriff of Fremont County, James W. Thompson, took into his possession the prop-

erty involved in this litigation as the property of the Federal Surety Company.

The Sterling Lumber Company thereafter made demand upon the officer aforesaid for the property thus taken and, upon his refusal to surrender it, commenced the action in replevin which culminated in the result hereinbefore detailed.

The only question we deem it necessary to determine here is whether, at the time the Sheriff took possession of the property, the intervenor Federal Surety Company had any right to hold it adversely to the claims of The Sterling Lumber Company. If the Surety Company possessed no such right, then the intervenors Lucas and Myers necessarily have none, as they were by their executions endeavoring to seize property owned by the Surety Company, and by no one else. This question, under the facts presented, is not very difficult of solution.

The appellant asserts its right to the possession of the property in question by virtue of the chattel mortgage foreclosure and sale of the shovel to it thereunder, and also by reason of the claim that it succeeded to the rights of the Osgood Company when the latter was paid the balance due on the shovel, and of which rights the Federal Surety Company had full knowledge through the statements made in the application of the partners when they applied for the bond legally required in connection with the highway contract aforesaid.

All the intervenors assert their claims as paramount regarding the property involved because of the "Agreement of Indemnity" mentioned above, and particularly because of the rights asserted by the Federal Surety Company, under the paragraph thereof previously quoted herein.

So far as the provisions of the paragraph just mentioned are concerned, the courts appear to hold that an instrument of that character is, in effect, a chattel mortgage in favor of the Surety Company as mortgagee, and against the partnership as mortgagor. See Commercial Casualty Insurance Co. v. Williams, 37 F. (2d) (C. C. A. 4th Cir.) 326; Mass. Bonding & Insurance Co. v. Kemper, 220 F. (C. C. A. 6th Cir.) 847. Regarded in that light, its effect must be determined by our law governing instruments of that character.

Sec. 4684, Wyo. Comp. St. 1920 (now Sec. 71-104, Wyo. Rev. St. 1931), which was operative during all the period when the transactions involved in this litigation occurred, reads:

"It shall be necessary for each and every member of a co-partnership to execute and acknowledge a mortgage, bond, conveyance or other instrument intended to operate as a chattel mortgage for and on behalf of the co-partnership; provided, that a chattel mortgage may be given to a co-partnership, in its co-partnership name without enumerating the several members thereof."

The effect of this statute as Sec. 2808 of Rev. St. 1899 has been indicated by this court in Thomas & Schmitz v. Schmitz, 15 Wyo. 181, 87 P. 996, where the following language was used:

"This court had occasion to consider Section 2808, above quoted, in the case of Lellman, et al. v. Mills, Trustee, decided at the present term, and it was held that, by reason of that statute, a chattel mortgage executed by one partner alone did not create a lien upon the partnership property. As said in the opinion in that case, the clear effect of the statute is to deprive a partner of any power as such to alone act for the firm in executing a chattel mortgage. It restricts the general agency of the partner in that particular, and, therefore, takes away the only support of the rule prevailing in some jurisdictions that one partner may make a valid chattel mortgage of partnership property

to secure a partnership debt without the concurrence or consent of his co-partners. The statute, indeed, goes further than that, and in effect denies the power of a partner to execute such an instrument even with the consent of his co-partner, unless the latter shall also by signing the same join in the execution thereof."

Turning to the record in this case, while we find that the original indemnity agreement appears to be signed by both partners, we discover, also, that it was acknowledged by neither.

Sec. 4687, Comp. St. 1920, also in force so as to affect the instrument now under consideration, but which was amended in 1931 (Laws of Wyoming, ch. 73, § 68) by the interposition of the words "or recorded" immediately preceding the words "as hereinafter provided" is as follows:

"Every mortgage, bond, conveyance or other instrument intended to operate as a mortgage of goods, chattels or personal property, which shall not be accompanied by immediate delivery and be followed by an actual and continued change of possession of the goods, chattels and personal property so mortgaged shall be absolutely void as against the creditors of the mortgagor, and as against subsequent mortgagees, or purchasers in good faith, unless said mortgage, bond, conveyance or other instrument intended to operate as a chattel mortgage shall be filed as hereinafter provided."

The record before us shows that an instrument purporting to be a copy of the original indemnity agreement aforesaid was merely recorded on January 16, 1929, at 9 A. M., in the miscellaneous deed records of Fremont County. It appears never to have been filed as the law required. As a matter of fact, it is not even a copy of the original instrument, for it appears to have been signed thus, "Scott & Curlee by_____" while the original, as already indicated, was executed, "Scott & Curlee, by Guy Curlee, H. L. Scott." Addi-

tionally, the instrument does not purport to be acknowledged by anyone.

It is hardly necessary to observe that the Federal Surety Company and the intervenors claiming through it obtained no rights to the property in question under such an instrument, as against the appellant claiming it as purchaser under the foreclosure of a chattel mortgage, executed, acknowledged, filed, and recorded as the statutes of this state direct. In First National Bank of Rock Springs v. Ludvigsen, 8 Wyo. 230, 56 Pac. 994, this court remarked in speaking of a chattel mortgage, "A mortgage not filed as provided in the act is absolutely void 'as against creditors of the mortgagor.'" Indeed, the correspondence in evidence as having passed between the Federal Surety Company, the partners, and the appellant, after the road project aforesaid had been taken over and completed by the Surety Company, indicates beyond question that the latter considered that the appellant, as mortgagee, had rights in the Osgood shovel which should be recognized. We note, too, in this connection, that no brief has been filed in this court on behalf of the Federal Surety Company, insisting upon its claim to the property.

It is suggested, in aid of the intervenors Myers and Lucas, that the foreclosure sale held under the chattel mortgage was invalid because conducted on November 11, 1930, designated by our statute as Armistice Day and a legal holiday. But in 29 C. J. 862, § 3, it is stated, as the general operation and effect of a statutory designation of a holiday, that:

"A legal holiday other than Sunday has effect as a holiday only as to those acts and transactions which are designated in the statute establishing the day. Accordingly it is held that with the exception of matters concerning which the statute provides that the day

shall be treated as Sunday, any act done on that day is as effective as if done on any other day."

In Garner v. Tulsa Building & Loan Assn., 131 Okl. 232, 268 P. 722, it was held that an Oklahoma statute designating every day on which an election was held throughout the state as a holiday did not render invalid a sheriff's sale, regular in all other respects, made on such holiday since no state statute commanded a suspension of official business on that day. See, also, Federal Land Bank of St. Paul v. Steele, 59 N. D. 722, 231 N. W. 892, where it was held that the sale of real estate on a legal holiday, under a power of sale contained in a mortgage, was valid where such sale was otherwise regular, and many authorities are reviewed at length. The point urged here cannot be sustained.

The intervenors Lucas and Myers contend that the appellant's specifications of error assigning that the judgment in question is contrary to the evidence and contrary to law cannot be considered by us because they are insufficient. The decisions of this court are to the contrary. See Schiller v. Blyth & Fargo Co., 15 Wyo. 304, 88 P. 648; Merchants' National Bank v. Ayers, 37 Wyo. 136, 259 P. 804.

In view of what has been said, it will be unnecessary to review the claim of the appellant, made under the conditional sale contract relative to the Osgood shovel, and assigned to it as hereinabove detailed. In that connection, however, we may cite the case of Casper Motor Company v. Marquis, 31 Wyo. 115, 223 P. 764. Other questions, also, are argued at length in the briefs but their consideration would only tend to lengthen this opinion, and not affect the result.

The judgment of the district court of Fremont County will be reversed and the cause remanded with instructions to enter judgment in favor of the appellant. Having in mind the failure of appellant, however,

536

to furnish a proper abstract in the case, as already commented on, no costs for its brief will be allowed.

*Reversed With Instructions.*

KIMBALL, Ch. J., and BLUME, J., concur.