### VERA KANTACK v. ROBERT KREUER.

158 N. W. (2d) 842.

May 3, 1968—No. 40,993.

*Farrish, Zimmerman, Johnson & Manahan* and *James H. Manahan,* for appellant.

*Blethen, Ogle, Gage & Krause,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from a judgment entered pursuant to findings of fact, conclusions of law, and order for judgment upholding a foreclosure of a mortgage by advertisement.

The facts are not seriously in dispute. On April 28, 1964, defendant, Robert Kreuer, lent to Ben Kantack and his wife, Vera, the sum of $24,296 to enable them to redeem their farm from foreclosure of a mortgage then existing thereon. The time for redemption was about to expire at the time the loan was made. To secure this loan the Kantacks executed a mortgage on their 154-acre farm in Blue Earth County to secure indebtedness of $30,496, which amount included the loan and $6,200 which the Kantacks' son then owed to Kreuer. The Kantacks were not previously obligated to pay the son's indebtedness and it is not clear from the record whether the inclusion of the son's obligation in the mortgage was an assumption of that obligation or only a guaranty of it. The entire face amount of $30,496 bore interest at six percent.

The Kantacks made only one small payment on the mortgage, which was applied to interest. Since payments were in default, notice was given for the sale of the premises under foreclosure. The notice was published for 6 weeks from August 16 to September 30, 1965, in the Good Thunder Herald, a local newspaper. The date and place of the sale were stated in the notice to be October 12, 1965, on the steps of the Blue Earth County Court House. The Kantacks received notice of the sale. The sale was held at the appointed time and place, Kreuer being the only bidder. He bid the farm in for the amount of the unpaid principal, interest, and costs, which then amounted to $32,504.

The Kantacks did not exercise their right of redemption within the time allowed by law. Ben Kantack died on October 3, 1966, a few days

before the year for redemption expired on October 12. This action was commenced on October 24, 1966, plaintiff seeking to have the foreclosure sale set aside on the grounds that the sale was held on a legal holiday (Christopher Columbus Day); in an amended complaint it was further alleged that the sale was for a grossly inadequate price. The questions raised here are (1) whether a foreclosure sale by advertisement held on a legal holiday is void; (2) whether, in view of the circumstances of the sale, the amount for which the property was sold was so grossly inadequate that the sale should be held void; and (3) whether the debt was usurious for the reason that the mortgage included not only the amount of the loan but the son's debt as well. This last question was raised for the first time on appeal.

■ The general rule with respect to the sale of property under foreclosure on a holiday is stated in 50 Am. Jur., Sundays and Holidays, § 80, as follows:

"In the absence of statutory prohibition, a judicial sale of property is not invalid because held upon a legal holiday or an election day. So, execution sales held upon holidays have been held to be valid. Likewise, the conduct of a tax sale on a holiday is not invalid unless made so by statute. Since a foreclosure sale is not a judicial proceeding, the holding of such a sale on Sunday is not void unless prohibited by statute."

Substantially the same rule is found in 40 C. J. S., Holidays, § 6, where, among other things, we find the following:

"A prohibition against the transaction of public business in the public offices of the state or the counties of the state on a legal holiday has been held not to apply to municipal legislation, an executive act of the governing body of a municipality, a hearing before county commissioners on a petition for a public road, the making of a return by surveyors of a public road, the publication of a law in an official journal or newspaper, or the publication of notice of a school bond election. The mere designation of a day as a holiday does not invalidate a sheriff's sale, or an order adjourning the sale made on such day."

The cases are collected in the above authorities and in an annota-

tion in 58 A. L. R. 1273. Defendant has cited a number of cases upholding the view that a sale of property on a holiday is not invalid [1] but an examination of those cases shows that the statutes differ in the various states and the applicability of the rule depends upon the language of the statute. Reference to a few of the cases may be of some help. In the case of Crabtree v. Whiteselle, 65 Tex. 111, 113, the court said:

"* * * Sunday is at common law a *dies non juridicus*, and hence the issuance and service of process on that day is invalid, independent of statute. * * * Holidays, on the other hand, have only the sanctity attached to them by statute. * * * The courts may hold and all business may be transacted, except what is positively forbidden."

In Young v. Patterson, 9 Cal. App. 469, 99 P. 552, the court upheld a tax sale made on a legal holiday on the grounds that the sale was a ministerial act and there was no statute prohibiting it.

There seems to be no quarrel with the general rule that, absent statutory prohibition, a foreclosure sale on a holiday will not be held invalid. Thus it becomes necessary to examine our statutory provisions to ascertain whether such sales have been prohibited. Minn. St. 580.06 provides:

"The sale [of property on a mortgage foreclosure by advertisement] shall be made by the sheriff or his deputy at public vendue to the highest bidder, in the county in which the premises to be sold, or some part thereof are situated, between nine o'clock a. m. and the setting of the sun."

Section 645.44, subd. 5, reads in part:

---

[1] See, for instance, Federal Land Bank of St. Paul v. Steele, 59 N. D. 723, 231 N. W. 892; Garner v. Tulsa Building & Loan Assn. 131 Okla. 232, 268 P. 722, 58 A. L. R. 1269; McLaughlin v. Houston-Hudson Lbr. Co. 31 Okla. 182, 120 P. 659, 38 L. R. A. (N. S.) 248; Leekley v. Victor Bldg. & Loan Assn. 158 Okla. 228, 13 P. (2d) 133; Lumpkin v. Cureton, 119 Ga. 64, 45 S. E. 729; Dumas v. Burleigh, 209 Ga. 241, 71 S. E. (2d) 545; Hadley v. Musselman, 104 Ind. 459, 3 N. E. 122; White v. Zust, 28 N. J. Eq. 107; Young v. Patterson, 9 Cal. App. 469, 99 P. 552; King v. Platt, 37 N. Y. 155; Kauffeld v. Tinstman, 54 Pa. Super. 158; Sterling Lbr. Co. v. Thompson, 47 Wyo. 519, 41 P. (2d) 264; Tillinghast v. Horton, 54 R. I. 100, 170 A. 70.

" 'Holiday' includes * * * Christopher Columbus Day, October 12 * * *. *No public business* shall be transacted on any holiday, except in cases of necessity and except in cases of public business transacted by the legislature, nor shall any civil process be served thereon." (Italics supplied.)

Plaintiff also relies on Minn. St. 1961, § 334.08, since replaced by the Uniform Commercial Code, which provided in part:

"Any contract * * * or instrument becoming due or performable on Sunday or a legal holiday becomes due or performable on the next succeeding business day."

We can quickly dispose of § 334.08 because foreclosure of a mortgage is not the performance of it, and this statutory provision has no application to foreclosure proceedings.

With respect to Minn. St. 645.44, subd. 5, the question becomes whether the sale of real estate under foreclosure of a mortgage by advertisement is *public business* and therefore prohibited by the statute. This seems to be the main thrust of plaintiff's argument. She argues that such a sale is public business within the meaning of the statute because the sale must be conducted, under § 580.06, by the sheriff or his deputy. Inasmuch as the sheriff is a public officer, she argues, the sale is public business and therefore the statute prohibits it from being conducted on a legal holiday.

The term "public business" as used in this statutory provision may well defy precise definition. We have found no authority that covers all situations.[2] But it seems clear that merely because a sale under foreclosure of a mortgage by advertisement is to be conducted by the sheriff does not make it public. The legislature has designated the sheriff or his deputy as the one to conduct the sale in order that there might be a disinterested person to act as auctioneer. It could equally as well have designated any licensed auctioneer, or any licensed realtor, or any person of a different class. As a matter of fact, before 1866, such sales could be made either by the person appointed for that purpose in the

---

[2] See, for example, 35 Wd. & Phr. (Perm. ed.) p. 83.

mortgage, or by the sheriff, undersheriff, or deputy sheriff of the county. Rev. Stat. (Terr.) 1851, c. 85, § 6 (Pub. Stat. 1849–1858, c. 75, § 6).[3] This section was amended by G. S. 1866, c. 81, § 7, to provide that the sale shall be made by the sheriff of the county or his deputy, and it has remained substantially so since. The change apparently was made to eliminate abuses that had developed under the then existing practice where a party could be selected by the mortgagee, or the sale could be conducted by the mortgagee himself, if so designated in the mortgage. In the case of Simonton v. Connecticut Mutual Life Ins. Co. 90 Minn. 24, 30, 95 N. W. 451, 453, we find the following with respect to this amendment:

"* * * The object of the amendment made by G. S. 1866, c. 81, § 7, was to prevent such abuses by providing that such sales must be conducted by a disinterested party—the sheriff. It is apparent from this history of the present statute that it was not intended thereby to invest the sheriff with the powers of a trustee for the enforcement of the mortgage security, or to give him any authority to execute the power by a sale of the mortgaged premises on his own motion or that of the mortgagor."

As the statute existed prior to the 1866 amendment, we doubt that anyone would contend that a sale of real estate under foreclosure of a mortgage by advertisement conducted by a private person designated for that purpose in the mortgage would constitute public business. If that be true, it is hard to see how a sale by the sheriff, undersheriff, or deputy sheriff under the same statutory provision, if a private person were not so designated, would be public business. It would be absurb to hold that if the sale were conducted by a person designated in the mortgage it would be private but if conducted by the sheriff it would be public. Thus we find it difficult to hold that the change in the law which re-

---

[3] Section 6 reads: "The sale shall be at public vendue, between the hours of nine o'clock in the forenoon, and the setting of the sun, in the county in which the premises to be sold, or some part of them, are situated, and shall be made by the person appointed for that purpose in the mortgage, or by the sheriff, undersheriff, or deputy sheriff of the county, to the highest bidder."

quired the sheriff or deputy to conduct the sale made it public business. The act of the sheriff or deputy in conducting the sale is purely ministerial. He has no interest in the matter whatsoever, nor is the public in any way interested in the sale. To be public business there must be some aspect of the business in which the public is interested. In the case of Green v. Frazier, 44 N. D. 395, 412, 176 N. W. 11, 17, the North Dakota court attempted to distinguish between private and public business in the following language:

"We have been unable, in the search of the authorities, to find any complete definition of the term 'private business.' Perhaps there is none. It is one, however, which is readily defined. It may be defined as a business or enterprise in which an individual or individuals, an association, copartnership, or private corporation, has invested capital, time, attention, labor, and intelligence for the purpose of creating and conducting such business, for the sole purpose that those who make such contributions may, from the conducting of such business, make, gain, and acquire a financial profit, for their exclusive benefit, improvement, and enjoyment, and, exclusively, for their own private purposes.

"They are not concerned with the public health, safety, morals, or welfare, but are concerned wholly with making a financial profit from the operation of such business, for, exclusively, their own private use and benefit.

"As contradistinguished from a private business, a public purpose or public business has for its objective the promotion of the general welfare of all the inhabitants or residents, within a given political division, as, for example, a state, the sovereignty and sovereign powers of which are exercised to promote the public health, safety, morals, general welfare, security, prosperity, contentment, and equality before the law, of all the citizens of the state."

This definition of public business by the North Dakota court was followed by the Louisiana court in State v. Housing Authority of New Orleans, 190 La. 710, 182 So. 725.

In Pike Rapids Power Co. v. Minneapolis, St. P. & S. S. M. R. Co. (8 Cir.) 99 F. (2d) 902, 911, the court said:

"* * * The fact that defendant is engaged in interstate commerce does not render its business a public business. It is a private business affected only with a public interest and therefore subject to public regulation. Its property is not public property; and its bridges and trains are not commerce, but mere facilities for transportation."

In Mack v. Costello, 32 S. D. 511, 143 N. W. 950, and Carr v. Wakonda Independent Consol. School Dist. No. 1, 44 S. D. 103, 182 N. W. 626, the South Dakota court held that the publication of a newspaper is not public business, saying in the Mack case (32 S. D. 515, 143 N. W. 951):

"* * * The publisher in publishing a newspaper, assumes no 'office, trust or station,' in a public sense, or enters into any public or contractual relation with the community at large."

In the case of Ingelson v. Olson, 199 Minn. 422, 272 N. W. 270, 110 A. L. R. 167, the claim was made that an order of a town board laying out a road was void because it was made on a holiday. We held that even though the order was adopted on Memorial Day it did not necessarily follow that the order was void. We said (199 Minn. 430, 272 N. W. 275, 110 A. L. R. 172):

"* * * The statute dealing with holidays * * * contains different prohibitions. Service of process is absolutely prohibited. The transaction of public business on such days is not absolutely prohibited, but is lawful and the thing done valid 'in case of necessity.' "

We also held that necessity in such situations will be presumed.

While the Ingelson case is not of much help in determining the issue involved here, it does illustrate that service of process and the performance of public business stand on different footings. Plaintiff argues that the obvious meaning of public business is business transacted by a public officer in his capacity as an official, and that this explains the reason why service of process is prohibited in a separate provision, because that can be done by one who is not a public officer. We think the opposite is true, and that the legislature saw fit to absolutely prohibit the service of process on a holiday and did not prohibit the transaction of

other business unless it was public business—that is, business in which the public is interested.

Our conclusion therefore is that the mere fact that the sale is conducted by the sheriff or his deputy does not make the sale of real estate under foreclosure of a mortgage by advertisement public business. The sheriff acts only as an officer designated by the legislature to conduct a fair sale and the public neither shares in the proceeds nor has any financial or other interest in the foreclosure sale. It is clearly private business.

■ With respect to the claim that the foreclosure sale should be invalidated because the bid was grossly inadequate, about all that needs be said is that the general rule is that a foreclosure sale free from fraud or irregularity will not be held invalid for inadequacy of the price. Johnson v. Cocks, 37 Minn. 530, 35 N. W. 436. The mortgagor has a year in which to redeem for the price for which the property is bid in. Aside from the general rule, while the trial court found that the property had a market value of $45,000, there is evidence from which the court could easily have found that it was worth less. Under the circumstances of this case, it could not be held that the amount for which the property was bid in was so grossly inadequate that the sale should be set aside on that account. In the cases where it seems to have been held otherwise there have been other elements involved that induced the court to hold the sale invalid. Thus, in Lane v. Holmes, 55 Minn. 379, 57 N. W. 132, where a single building covering two lots was sold under foreclosure by dividing the lots so as to bring a lower price, we invalidated the sale. In this case there is no claim that there was any fraud or irregularity in the sale except that it was held on a holiday. Inasmuch as we hold that the fact the sale was held on Columbus Day was insufficient to invalidate the sale, that fact furnishes no ground upon which the sale can be invalidated for inadequacy of the bid.

■ With respect to the claim of usury, it was neither pleaded nor tried, nor was it submitted to the trial court on post-trial motion. It is raised for the first time on appeal. Except in very unusual cases where as a matter of law the determination of the issue will dispose of the case, such issues cannot be raised for the first time on appeal. Whether a transaction is usurious is ordinarily a question of fact. Seebold v. Eustermann,

216 Minn. 566, 13 N. W. (2d) 739, 152 A. L. R. 585. In view of the fact that this issue was never submitted to the trial court we decline to pass upon it here.

Affirmed.

MR. JUSTICE SHERAN took no part in the consideration or decision of this case.