832

683 P.2d 868

Karl KETTERER, Plaintiff-Respondent,

v.

Roger W. BILLINGS and Jane Doe
Billings, husband and wife; and
Gene Mileck, Defendants,

and

Nola Mileck, Defendant-Appellant.

No. 14660.

Supreme Court of Idaho.

July 3, 1984.

Eugene A. Marano of Marano & Robinson, Coeur d'Alene, for defendant-appellant.

James W. Atwood, Atwood & Ayers, Hayden Lake, for plaintiff-respondent.

DONALDSON, Chief Justice.

On or about May 1, 1975, respondent Ketterer filed an action to foreclose a materialman's lien on the residence of appellant Mileck and her husband, Gene Mileck. Judgment for $1,452.42 was subsequently entered in favor of Ketterer. Thereafter, the Milecks' property was sold to Ketterer at an execution sale conducted by a special constable on November 11, 1976. Neither of the Milecks exercised their right to redeem the property, and therefore, Ketterer obtained title to the property by virtue of a sheriff's deed.

Sometime thereafter it was discovered that the description of the property in the lien, complaint, judgment, and deed was inadequate. Therefore, respondent Ketterer moved for a decree reforming the sheriff's deed. Subsequently, the court issued its decree reforming the sheriff's deed on March 13, 1979. However, the decree reforming the deed was effective only against Gene Mileck because of a defective service on Mileck.

Gene Mileck died on October, 1979. On September 25, 1980, appellant Nola Mileck filed her Motion To Set Aside The Execution Sale. After a hearing on the matter, the district court denied the motion. This appeal followed.

We shall address appellant Mileck's contentions on appeal in the order presented to us. Initially, appellant Mileck argues that the execution sale should be set aside because it was conducted by a special constable rather than by a sheriff. We disagree.

I.C. § 31–3010 authorizes a magistrate "to appoint and deputize any person [in the county] to act as special constable, with full power and authority to perform such duties of constable as the magistrate may specifically order or designate." Furthermore, I.C. § 31–3002 provides that constables are to "execute, serve and return all process and notices directed or delivered to them by a magistrate ... or by any competent authority." We hold that a district judge qualifies as a "competent authority." Consequently, the use of the special constable, under the direction of the district court, to conduct the execution sale was proper and therefore, we refuse to set aside the execution sale on this ground.

Secondly, appellant contends that the execution sale should be set aside since it took place on November 11, 1976, a legal holiday. Appellant argues that an execution sale is judicial business which according to I.C. § 1–1607 may not be transacted on a legal holiday.

We are unconvinced that an execution sale constitutes "judicial business" as that term is used in I.C. § 1–1607. Rather, we believe an execution sale is a ministerial act. *See Young v. Patterson,* 9 Cal.App. 469, 99 P. 552 (1908) (tax sale constitutes a ministerial act). We have previously held that the statute prohibits judicial but not ministerial acts on a Sunday or other legal holiday. *State v. Gilbert,* 8 Idaho 346, 69 P. 62 (1902); *Havens v. Stiles,* 8 Idaho 250, 67 P. 919 (1902). This comports with the general rule that execution sales conducted on holidays are valid. *See Kantack v. Kreuer,* 280 Minn. 232, 158 N.W.2d 842 (1968); *see generally* 73 Am.Jur.2d *Sundays & Holidays* § 119 (1974); 40 C.J.S. *Holidays* § 6 (1944); Annot., 58 A.L.R. 1273 (1929).

Furthermore, I.C. § 11–304, the section which describes the manner in which an execution sale is to be conducted, simply states that "[a]ll sales of property under execution must be made at auction, to the highest bidder, between the hours of nine (9:00) in the morning and five (5:00) in the afternoon." I.C. § 11–304 places no other restrictions on the time when an execution sale may be conducted. Appellant has not contended that the execution sale herein violated I.C. § 11–304 in any manner. Therefore, we refuse to set aside the execution sale on the ground that the sale took place on November 11, 1976.

Thirdly, appellant Mileck argues that the execution sale should be set aside because the property description in the Notice of Sale was incorrect. It is undisputed that the real property involved herein consisted of the North ½ of Lot 7 and the North ½ of Lot 8, Block 30 of the corrected plat of the

town of Coeur d'Alene. The Milecks' residence was situated on this piece of property in such a manner that it straddled the line between the north halves of Lots 7 and 8. The description of real property contained in the materialman's lien, complaint, judgment, Notice of Sale, and sheriff's deed was inadequate in that it referred to only the north ½ of Lot 7. Therefore, appellant Mileck asserts that the execution sale must be set aside due to the incorrect property description. In reply, respondent Ketterer argues that the description was sufficient since it adequately identified the property, and since both of the Milecks were aware that the lien was filed with respect to all of the property and the residence thereon.

On July 19, 1978, respondent Ketterer petitioned the district court for reformation of the sheriff's deed which had been issued. On March 12, 1979, the district court granted respondent's petition and reformed the deed to include both the north ½ of Lot 7 and the north ½ of Lot 8. However, immediately above his signature, the district judge added the following hand-written sentence to the decree reforming the deed: "This decree is limited in its application to defendant Gene Mileck only as he alone was served with the petition for reformation."[1]

■ We begin our analysis of this issue by noting that the property description used in the lien, complaint, judgment, and sheriff's deed was not an incorrect description. The description was an adequate and correct description of the north ½ of Lot 7, Block 30. Although this description was apparently not the entire description which was intended by respondent Ketterer, that failure on respondent Ketterer's part does not make the description given any less correct. Therefore, there is no need to set aside the execution sale on this ground, because there was no incorrect description. However, our analysis does not end here. Since the decree reforming the deed was effective only as to Gene Mileck's interest in the north ½ of Lot 8, appellant Nola

Mileck still possesses an undivided one-half interest in the north ½ of Lot 8. Consequently, as a result of purchasing the property at the execution sale, respondent Ketterer now possesses all of the interest previously owned by the Milecks in the north ½ of Lot 7, and an undivided one-half interest in the north ½ of Lot 8. Appellant Mileck and respondent Ketterer are therefore tenants in common, each possessing an undivided one-half interest, as to the north ½ of Lot 8. *See Young v. Hessler,* 72 Cal.App.2d 67, 164 P.2d 65 (1945); *cf. First National Bank of Southglenn v. Energy Fuels Corp.,* 200 Colo. 540, 618 P.2d 1115 (1980) (joint tenancy severed by operation of law by execution sale results in purchaser becoming tenant in common with remaining tenants).

Lastly, appellant Mileck contends that the entire execution sale should be set aside because of the large disparity between the value of the property at the time of the sale and the amount paid for the property at the execution sale. Respondent Ketterer purchased his interest in the property at the execution sale for $1,586.94. In addition, the district court found that the actual worth of all of the property (*i.e.,* the north ½ of Lot 7 and the north ½ of Lot 8) and the home was $20,500.00. Therefore, appellant asserts that the gross inadequacy of consideration, and the other circumstances previously discussed, provide sufficient grounds to set aside the execution sale.

■ Although the total value of the home and property was found to be $20,500.00, there is no finding as to the value of the north ½ of Lot 7 and an undivided one-half interest in the north ½ of Lot 8 which is the property actually purchased by respondent Ketterer at the execution sale. Consequently, it is unclear whether there is a gross inadequacy of consideration here entitling appellant to the relief she seeks. We note, however, that this is an extremely unique case as exemplified by the fact that the house stradles the property line between the north halves of Lots 7 and 8, and by the fact that appellant Mileck possess

1. We express no opinion as to the district court's opinion that the reformation is applicable only to Gene Mileck because neither of the parties have questioned this on appeal.

an undivided one-half interest in the north ½ of Lot 8, and that respondent Ketterer possesses an undivided one-half interest in the north ½ of Lot 8 in addition to his interests in the north ½ of Lot 7. Therefore, in order to do equity to all parties involved, we are remanding this case to the district court with instructions to conduct a sale of the north halves of Lots 7 and 8 including the house located thereon. The court is then instructed to distribute 75% of the proceeds to respondent Ketterer, and 25% of the proceeds to appellant Mileck.

Judgment affirmed with modifications, and remanded.

Parties to bear their own costs on appeal.

No attorney fees on appeal.

BAKES, BISTLINE and HUNTLEY, JJ., concur.

McFADDEN, J. pro tem., concurs in the result.

BISTLINE, Justice, specially concurring.

Although I have joined the Court's opinion, it is with the feeling that our judgment today is more on the side of equity than it is of law. Mr. Ketterer has been waiting a long time for his money, $840.00, due ten years ago for furnishing labor and materials on the Mileck residence. Unfortunately, in perfecting his lien and suing to foreclose it, he did not correctly describe the property. But he was able to bid in the lot he had liened against and a part of the residence for the amount of his judgment. In that lawsuit, of which this is a continuation of a comedy of errors, Mr. Mileck's first *pro se* pleading was an absurd motion to bring in Mr. Ketterer's attorney as a party.[1] On the fourth trial setting the case was tried, although Mr. Mileck had not filed an answer, and he continued his *pro se* representation. Mr. Ketterer prevailed and was awarded the amount of his bill plus $500 attorney's fees and his court costs. The total amount adjudicated due, $1,452.42, was decreed a lien on the N ½ of Lot 7, Block 30, being the same property against which the lien was filed. And a sale was had with Mr. Ketterer bidding in as aforesaid. The date—December 17, 1975. Almost three years later Mr. Ketterer, in the same action, this action, moved to reform the deed which he had acquired at the sheriff's sale so that it would encompass the north ½ of Lot 8 as well as Lot 7.[2] Mrs. Mileck was not served. Mr. Mileck let it go by default, and a decree was entered reforming the deed. This was long after the original action, this action, was over with, i.e., no longer a pending action. The district court, the Honorable Watt E. Prather, obviously had no jurisdiction to act, but there was no contest offered. Judge Prather specifically hand-wrote into the decree that it is "limited in its application to defendant Gene Mileck only as he alone was served with the petition for reformation." The date of the deed was March 12, 1978, although it was obviously signed on March 12, 1979, and filed on that date.

On April 25, 1980, Judge Prather signed an order requesting that a judge from outside the First Judicial District be assigned to Case No. 33659, this case,[3] notwithstanding that it was for a second time a wholly terminated action—all time for proper motions having twice gone by. That request stated that Judge Haman, Judge Cogswell, Judge Towles, and Judge Prather had disqualified themselves. R., p. 35.

The court minutes reflect that Judge Roger Swanstrom of the Second Judicial District was assigned to Case No. 33659,

---

1. This Court over the years has had occasion to become conversant with the fact that over the years Mr. Mileck and a few other people in Kootenai County have played this kind of game with the judicial system.

2. Compare this procedure to the procedure used in *Ruiz v. Southern Idaho Production Credit Ass'n,* 105 Idaho 140, 666 P.2d 1151 (1983) (Bistline, J., dissenting).

3. Judge Prather also asked reassignment of fourteen other cases wherein Mr. Mileck was involved, and also a Mr. Miller. For flavor, *see Eismann v. Miller,* 101 Idaho 692, 619 P.2d 1145 (1980).

this case, but that at a calendar call he was informed "that Judge Cogswell would have jurisdiction in this matter." Thereafter, in Case No. 33659, this case, Mr. Marano filed a notice of appearance as counsel for both Milecks, and moved to set aside the execution sale of almost five years earlier. The date was, again, September 25, 1980.

In January of 1981, counsel stipulated to have the motion heard before Judge Cogswell—a month later. Without any change in the title showing the appointment of a Personal Representative (Mr. Mileck died in October of 1979), the motion was heard with the taking of testimony. This time it was Mr. Ketterer who did not answer or challenge the jurisdiction of the district court.

In a written order denying the motion, Judge Cogswell recited the strange chronology of Case No. 33659—actually three separate proceedings, the second two of which should have been the basis of independent actions. Judge Cogswell showed his concern for the claim of gross inadequacy of consideration at the execution sale, but, while noting that the evidence showed that at the time of sale it was worth $20,500, concluded that the motion to set aside the execution sale was untimely. Citing this Court's statement in *Gaskill v. Neal*, 77 Idaho 428, 433, 293 P.2d 957, 960 (1956),[4] Judge Cogswell declared that "The Court can find no additional slight circumstances that would warrant setting aside the execution sale."[5] One reason which I see, and have alluded to above, is that every district judge in North Idaho and every justice then on this Court knew that Mr. Mileck was a

maverick who simply was obsessed with the notion that the entire court system was corrupt, and that he was of such a nature that he not only could, but would, inflict his emotional problems on his poor wife, which is borne out by her testimony that: "If I saw an attorney, I would have been going against him—probably would have caused problems in our marriage." R., p. 45(a).

The untimely motion was essentially a petition in equity (as was true of the reformation effort made by Mr. Ketterer) and should have been an independent action. Once Mr. Mileck was gone, the record is conclusive that Mrs. Mileck then moved rapidly. Before that time, whatever may be the state of law, the hands of Mrs. Mileck were tied until her husband died— she simply was in no position to help herself. On the other hand, Mr. Ketterer still waits for his money. His judgment became merged in the execution sale. He ended up owning one-half of a lot with part of a house on it—which adds up to more litigation. The order supposedly reforming the deed is void on the face of the record, although such an attack has not been mounted. Even if the district court had continuing jurisdiction of the action, which it did not, it did not have jurisdiction to reform a deed which was based on the same exact description as the filed claim of lien.[6]

At any rate, I am somewhat satisfied with the equity done by the Court's opinion. If we affirmed Judge Cosgwell, Mrs. Mileck would come penniless—a victim of her husband's irrationality and legal incom-

---

**4.** My dissenting opinion in *Curtis v. Campbell*, 105 Idaho 705, 672 P.2d 1035 (1983), cited the same authority:

"As a general rule, mere inadequacy of consideration is not sufficient ground for setting aside a sheriff's sale, but it is uniformly held that gross inadequacy of consideration, coupled with very slight additional circumstances, is sufficient. *Federal Land Bank of Spokane v. Curts*, 45 Idaho 414, 425, 262 P. 877; *Fiolle v. First Nat. Bank of Thomas*, 173 Okl. 501, 49 P.2d 145; *Rastelli v. Zaca Mining Corp.*, 52 Cal.App.2d 507, 126 P.2d 368.

"The order appealed from is affirmed.

"Costs to respondent."

*Gaskill v. Neal*, 77 Idaho 428, 433, 293 P.2d 957, 960 (1956).

**5.** Judge Cogswell also stated that a motion made almost four years after the sale could "handily be classified as action taken 'promptly and without unnecessary delay'." If this had been the sole basis of his denial of the motion, we would be hard-pressed to reverse him, equity or no.

**6.** An interesting lien foreclosure case, with aspects of the doctrine of *res judicata*, is *Karlson v. National Park Lumber Co.*, 46 Idaho 595, 269 P. 591 (1928). I recommend it as good and helpful reading. It has application to this case.

petence. Mr. Ketterer, who really only wants his money, would be handed a windfall. The consideration paid by Mr. Ketterer at the execution sale was, as the district court found grossly inadequate.[7]

The proceedings on remand may still leave Mr. Ketterer with too much of a windfall, as against the $3,000 or so he is now entitled on an interest basis.

**7.** I agree with the Arizona Court which held *gross* inadequacy sufficient to justify setting aside a sale—assuming that relief is timely sought.

"A court may order an execution sale set aside on the basis of two grounds: First, the purchase price received at the sheriff's sale may be so inadequate as to shock the conscience of the court and justify setting aside the sale, *Nussbaumer* [*v. Superior Court,* 107

Ariz. 504, 489 P.2d 843 (1971) ], *supra; Wiesel v. Ashcraft,* 26 Ariz.App. 490, 549 P.2d 585 (1976). Second, where there is an inadequacy of price which in itself might not be grounds for setting aside the sale, slight additional circumstances or matters of equity may so justify."
*Mason v. Wilson,* 116 Ariz. 255, 568 P.2d 1153 (Ariz.App.1977).